Iredell,
 
 JuJHce.
 


 This great caufe comes before, the Court, orfcli motion made by the Attorney-General, that an order be made by this Court to the following effe.dl:—« That, unlefs the State of
 
 Georgia
 
 fhali, after reafonkble notice of this mo- “ tion, caufe an appearance to be entered on behalf, of the <( faid State, on the fourth day of next Term, orfhew caufe to “ the contrary, judgment fhali be .entered for the Plaintiff, and ■ “ a. writ .of enquiry fhali he awarded.” Before fuch an order be made, it is'proper that this Court fhould be fatisfied it hath cognizance of the fuit 3 for, to be fure we ought not to enter a conditional judgment (which this would be) in a cafe where we were not fully perfuaded we had authority to do' fo.
 

 This is the firfl inflance wherein the important queilion involved in this caufe has com'e regularly before the Court. • In the
 
 Mdryland
 
 cafe it' did not, becaufe the Attorney-General of. the State voluntarily appeared. We could nor, therefore, without the gieatefl impropriety, have taken up the queition fuddenly. That cafe has lince been compromiied-: But, had it proceeded to trial, and a' verdidl been given for the Plaintiff, it would baVe been our duty, previous to our. giving judgment, to have well
 
 *430
 
 eonfidercd whether we were- warranted in giving it. I had titea great doubts upon my mind, and Ihould in fuch a cafe, have-' propofed ■ a difcuffion of the fubjedt. Thofe doubts have in< creafed fince, and, after the fulleft confederation, ‘I have beén. able to bellow on the fubjedt, and the moil refpedtful attention to the able argument of the Attorney-General, I- am now decidedly of opinion that no'fuch adtionas this before the. Court: can legally be maintained.
 

 The action is au'adtionof
 
 ajfumpfit.
 
 The-particular q.ueftion. then before the Court, is, will an action of
 
 affampftt
 
 lie againft a State 2 This particular queltion íabílráfted from the general one, viz. Whether, a State can in any inílance be fued ?). I took the liberty .to. propofe to the conlideration of the Attorney-General, lalt Term. I did fo, becaufe I have often found a great deal of eonfufion to arii'e from taking too large a view at once, and I had found myfelf -embarrafled on, this very fubjedt,; until I confidered the abítradt queílion itfelf. The- Attorney-General has fpoken to it, in Jefeence to my requeft, as he has been pleafed to intimate, but. he fpoke to this pa ticula-r queltion llightly, conceiving it to. be involved in the general one ; and after eitablilhing, as lie thought, that point, he feemed to confider the other followed of courts. He exprefledi indeed, fome doubt how to prove what appeared. £b.plain.- If feemed to him (if I recoiled! right) to depend principally on the- folution of this fimple queftion; can a State -aflume ? But the Attorney-General. mull kiio.w, that in
 
 England,
 
 certain judicial proceedings not inconfiftent with the
 
 fovereignty,
 
 may cake place againft the Crown, but that an, adtionof
 
 ajfumpfit;,
 
 will not lie. Yet ftfrely the
 
 King
 
 can aflume-as well: as a State. So. can fche
 
 United itates,
 
 them felves, as. well as any State in, the Union : .Yet, the Attorney-General himfelf has taken.fome pains, to ihew, that no action- whatever is. maintainable againft the
 
 United-
 
 States,. 1 fihall, therefore, confine myfelf, as much as. poffible, to the -particular queltion before the Court, though every thing I have to fay upon it will effcdt every kind of fult, the ohjedt of which, is to compel the payment of money by a.State,.
 

 Tbe-queftioii, as-1 before obfezved, is,—will anadtion
 
 oí af fumpftt
 
 lie ag.ainft a State i If it will, it mult b.e in virtue of the Conftitutjon of. the
 
 United States,
 
 and of -fome law of
 
 Com-, grcfs
 
 conformable thereto. The part of-the Confut'dtion concerning the-Judicial Rower, is as follows, viz :
 
 Art.
 
 3.
 
 Jedt.
 
 2. The judicial Power {hall extend, (. t.) To.all cafes, in, law and equity,, arifing under the Gonftitution, the law.s of .the
 
 United'
 
 States, and treaties made, or which Stall be made, under their authority.-' (2.) To .all cafes aftedting Ambafladors, or other-public Miniíters,, and- Confuís; (3.) To all'cafes of Admiralty i>id Maritime Jurifdidticii; (.4.) To centro verfies to which, thei
 
 *431
 

 United States
 
 íhall be a' party;
 
 (¡.j To
 
 coiitroverfies between two or more States ; between a State and citizens of another State 5 between, citizens- of different States; between citizens of the . fame State,, claiming lands under grants. of . different States; and, between a State or the citizens thereof, and foreign States, citizens or fubje&s. The Conftitution,.therefore, provides for the jurifdidfion wherein a State is a party, in file following inftances
 
 if.
 
 Controverfies between two or more States. -
 
 id.
 
 Controverfies between a State and citizens of another State,
 
 id.
 
 Controverfies between a State, and foreign States, citizens, or fubjedls. And it alfo provides, that in all cafes in which a State lhall be-¾ party, the Supreme Court íhall have original jurifdi£Hon,
 

 The words of-the general judicial a<ft, conveying the author. rity of the Supreme Court, under the Conftitution, fo far a3 they, concern this queftion, areas
 
 follow:—Sect.
 
 13. « That the Supreme Court íhall have exclufive jurifdkftion of all con-iroverfies of a civil nature, where a State is a party, except between a State and its citizens; and except alfo, between a State and citizens of other States, or aliens, in which latter cafe
 
 it
 
 íhall have original, but not exclufive' jurifdi&ion- And ihali have, exclufively, all jurifdiftion of fuits or proceedings againft Ambafladors, or other public Minifters, or their domeftics, or domeftic fervants, as a court of law’ can have or exercife confif-tently with the law of nations ; and original, but not exclufive 'jurifdhSion 'of. all fuits brought by Ambafladors, or other pub-.lie Minifters, .or in which a Conful, or Vice-Conful, íhall be a party.”
 

 - The Supreme Court hath, therefore, first.
 
 Exclufive.
 
 j urifdiction in every controverfy of a civil nature :
 
 if.
 
 Between two or more-States,
 
 id.
 
 Between a State and a foreign State.
 
 3d.
 
 Where a.fuit or proceeding is depending againft Ambafladors, other public minifters, or their domeftics, or domeftic fervants. ■SECOND-
 
 Original,
 
 but not exclufive jurifdi&ion,
 
 1fl.
 
 between a-State and citizens of other States,
 
 id.
 
 Between a State and foreign citizens or iubje&s..
 
 *$d.
 
 Where a fuit is brought byAmbaf-fadors, or other public minifters..
 
 4th,
 
 Where a confuí, or vice-conful, is a party The fuit now before the Court (if maintain able at all) comes'within the latter defeription, it being a fuit againft a State by a citizen of another State.
 

 The Conftitution is particular in exprelling the
 
 parties
 
 who may bé the obje.&s Of the jurifdiftion in any of thefe cafes, but in refpeét-to the fuhjeft-matter upon which fuch j-u-rifdi£Hoa is-tb be exercifed,' ufes..the- word “ controverfies” only. The a£t of
 
 Ccngrefs
 
 more particularly mentions
 
 civil
 
 contrQverfies, a qualification of the general word-in the Conftitútiorf, w*hichT daatot- double very,reafanablfc'tnan will think, well warrantc'd, for
 
 *432
 
 it cannot be prefumed that the general word “-.controv'eriies** was intended to include any proceedings that relate to criminal cafes, which in all inltances that refpe& the fame Government» only, are uniformly coniidered of a local nature, and to be der cided by its particular laws. The Word “ controverfy” indeed^ would not naturally juftify any fuch conftrudlion, but n ever the-lefs it was perhaps a proper inftance of caution in
 
 Congrefs
 
 to guard againft’ the poliibiiity of it.
 

 A general queftion of great importance- here occurs. 'What controverfy of a civil nature can be maintained againft a State by an individual
 
 i
 
 The framers of the Conftitution, I prefume, muft have meant one of two things : Either r. In the.conveyance of that part of the judicial power which did not relate to the execution of the other authorities of the general Government (which it muft be admitted are full and.difcretionatyj within' the reftri£tions of the Conftitution itfelf), to refer to antecedent laws for the conftrufldon of the general words they ufe : Or, 2. To enable
 
 Congrefs
 
 in all fuch cafes to pafs all fuch laws, as they might deem necellary and proper to carry the pur-pofes of this Conftitution into full effe£l, either aSfolutely at their diferetion, or at leaft in cafes .where- prior laws were deficient for fuch purpofes, if any fuch deficiency exifted.
 

 The Attorney-General has indeed fuggefted another cort-ftruction, a conftrucliors, I confefs, that I never heard of before, nor can I now confider it grounded on any folid foundation, though it appeared to me to be the bafts of the Attorne.y-GenefalTs argument. His conftruÉHon I take to be this
 
 :-*•
 
 “ That the moment a Supreme Courtis formed, it is to exer-cife all the. judicial'power veiled in it by the Conftitution, by its own authority, whether the Legiflature haG preferibed me» thods of doing fo, or not.” My conception of the Conftitution is entirely different. I conceive, that all the Courts ’ of the , LT-
 
 ttHed States
 
 muft receive,-not merely their
 
 organization
 
 as to the number of Judges of which they are to conftft ; but all their authority, as to the manner of their proceeding, from the Legifla-ture only. Ihis appears to me to be one of thofe cafes, with many others, in which an article of the Conftitution cannot be effeñuated'without the intervention of the Legiflative authority. There being many fuch, at the end of the fpeciat enumeration of the powers of
 
 Congrefs
 
 in-the Conftitution, is this general-one : “-To make- all laws which íhallbe neceffary and proper for carrying into execution the foregoing Powers, and all other powers veiled by this Conftitution in the Government of the
 
 United States,
 
 or in any department or officer thereof.” None will deny, that an a£f of Legiflation is neceffayto fay, at leaft of what number the Judges are to conftft; the
 
 Prefdent
 
 with the eonfent of the
 
 Senate
 
 could not nominate á number at their
 
 *433
 
 rtifcretión. The Conftitution intended this article fo far at lead to be the fubjedt of a .Legislative adt. Having a right thus tb eftabliih the Court, and it being,capable of being eftábliíhed in no other manner, I conceive it neceffarily follows, -that they are alfo to direct the manner of its. proceedings. Upon this authority, there is, that I know, but one limit; that is, ct that they ihall not exceed their authority.” If theydo, I have no hefitation to fay, that any adt to that effect' Would be utterly void, becaufe it would be inconfiftent with the Constitution, which is a fundamental law paramount to all others, which we are not only bound to. confult, but fworn to obferve.; and, therefore, where there is an interference, being fuperior in obligation to the other, -we muft unqueftionably - obey that in preference. Subjedt to this reftridtion, the whole bufinefs of organizing the .Courts, and diredting, the me thods of their proceeding where neceflary, I conceive to be in the diferetion of
 
 Congrefs.
 
 If it ihall be found oil this occafion, dr oh any other, that the remedies now in being are defedtive,- for any purpcfe it is their duty to provide for, they.no doubt will provide others. It is their duty to
 
 legifate
 
 fo far as is neceflary to. carry the Con-ftitution into effedt. It is
 
 ottrs
 
 only to
 
 judge.
 
 We have no reason, nor any more right' todiftruft their doing their duty, than they have to diftruft that we all do ours. There is nc part of the Conftitution that I know of,' that authorifes this Court tb take up any bufinefs where they left it, and, in order that the-powers given in the Conflitiitioii may bé. in. full adtivity, fupply their omiflion by making
 
 new laws
 
 for
 
 new 'cafes
 
 ; or, which I take to be fame thing, applying
 
 old principles
 
 to
 
 new cafes
 
 materially different from thofe to which they were applied before;
 

 With regard to the Attorney-General’s dodtrine of incidents, that was founded' entirely on the fuppofition of the other I have been considering. The authority contended for ⅛ certainly not one of thofe neceffarily incident-to all Courts merely as Such.
 

 If therefore, this Court is tó be (as I consider it), the o.rgati Of the
 
 Co>f tint ion and the
 
 law, not of the
 
 Golifitutim
 
 only, ,in refpedt td the manner of its proceeding, we muft ■ receive our diredtions from the Legislature in this particular, ahd have'no right to conftitute ourfelves ah
 
 ojfcina
 
 brevhm, or take any other fliort method of doing- what the - Conftitution has chofeh (and, in my opinion, with the moft perfedt propriety) Should bé done • ih another mahtter.
 

 But the adt of
 
 Congrefs
 
 has not been altogether filent upon thisfubjedt; The
 
 i¿,th feet,
 
 of the judicial, adt, provides in the following Words :
 
 “
 
 All the before mentioned Courts oi the
 
 United States,
 
 ihall have power to iffue writs of
 
 fire facias, ha-beas corpus,
 
 and all other writs not-Specially' provided for by Statute, which may be neceftary for the exercife of their refpectiye
 
 *434
 
 jurifditUonSj and
 
 agreeable to the principles and-ufages of law*.
 
 Thefe words refer as well to the Supreme Court as to the o ther Courts of the
 
 United States.
 
 Whatever writs we iffue, that are neceflary for the exercife of our jurifditSion, muft be
 
 agreeable to the principles and ufages of law. •
 
 This is a direction, I apprehend, we cannot fupercede, becaufe it may appear to us not fufficiently extenfive. If it be not, we muft wait till other remedies are provided b.y the fame • authority. From this it is plain that the Legiilature did not chufe to leave- to our own difcretion the path to juftice, but hasprefcribed one of its own. In doing fo, it has, Í think, wifely, referred us to principles and ufages oFlaw-already well known, and by their pre-cifion calculated to guard againft. that innovating fpirit of Courts of Juftice, which the Attorney-General hi another cafe repro-bated with fo much warmth, and, with whofe fen.timents in that particular, I moft cordially join. The principles of law to 'which reference is to be had, either upon the general ground I firft alluded to, or upon the ipecial words I have above cited, from the judicial aft, I apprehend, can be, either,
 
 ift.
 
 Thofe ' of the particular law.s of the State, againft which the fuit ⅛ brought. Or,
 
 2d.
 
 Principles of law common to all the States. I omit any confideration arifing-from the word<c ufages,” tho’ a ftill ftroiiger expreffion. In regard to the principles of the particular laws of th* State of
 
 Georgia,
 
 if they in any manned differed, fo as to effeft this queftion, from the principles of law, commonto all the States, it might be' máterial to enqiiire, whether, there would be any propriety or congruity in laying down a rule of decifion which would induce-this confequence, that an action would lie in the Supreme Court againft Tome States, whofe laws admitted of a compulfory remedy againft their own Governments, -but- hot againft others, wherein' ho fuch remedy Was admitted, or which would require, perhaps, if the principle was received, fifteen different methods o'f proceeding againft States, all {landing in the'fame political relation to the general Government, and none having any .pretence to a diftin&on in its favor, or juftly liable to any diítináion to its prejudice., if any fuch difference exifted in the laws of tke different States, there would Teem to be á propriety, in order* to induce uniformity, (if a Conftitutionál power for-that pur-- - pofe exifts), that
 
 Congrefs
 
 íhould preferibe a rule, fitted to this new cafe, to which no equal, uniform, and impartial mode of proceeding could otherwjíe be appliad.
 

 But this point, I conceive, it is, utmecefiary to determine, becaufe Í believe there is no doubt that neither in the State now. in queftion, nor in any other in the. Union, any .particular Le-giflative mode, authorifing a'compulforyTuit for the recovery of money againft a State, was in being either when the Conftitu-
 
 *435
 
 €on was adopted, or at the time-the judicial adl was pafíed. Since that time an ail of Affembly for fuch a purpofe has. been pafíed in
 
 Georgia.
 
 But that furely could have no influence in the-eonitruition of an a£l of the Legiflat-ure of the
 
 United States
 
 palled before.
 

 ■ The only principles of law, then, that can be regarded, are thofe common to all the States-. I know of none fuch, ■ which can afieit this cafe, hut thofe -that are derived from what ⅛ properly termed <£ the 'common law,” a Jaw which -I prefume is the ground-work of the laws in every State in the
 
 Union,
 
 and which I confider, fo far as it is applicable to the peculiar cir-cumftances of the country, and where no fpecial a£t of Legifla-fcion cóntrouls it, to be. in force- in' each State,
 
 as it exifledin-England, (unaltered by any Jlatute) at the time of the firjl fettlement of the country.
 
 The ftatutes of
 
 England
 
 that are in force ⅛
 
 America
 
 differ perhaps in all the States ; and, therefore, it is probable the common law in each, is in lome refpects different. But it is certain that in-regard to any commpn law principle which «an influence the queftion before us no. alteration has been made by any flatute, which could occafion the leaft material difference* or-have any partial effect'. No other part of the common law of
 
 England,
 
 it appears to me, oun' have any reference to this fubjedt, but that part of it which prefcribes remedies; again# the crown;. Every State- in the
 
 Union
 
 in every inftance where its fovereignty has not been,delegated to the
 
 United States,
 
 Icorifider to be as coinpleatly foveraign, as the
 
 United States
 
 are' in re-fpedt to th'e powers furrendered. The'
 
 United Stalks
 
 are fove-reign as tó aH the powers.of Governmenbadlually furrendered-: Each State ⅛- the
 
 Union
 
 is fovereign as to all.the powers referv-eck.. It muff neceffarily.be. fb, becaufe
 
 th¿ ‘United 'Statos
 
 have no claim to any authority but- fuch
 
 as the States have furrendered to
 
 themOf courfe the part not furrenderred mull , remain as.it did before. The powers, of the general Government, either of a Legiflative- .or Executive nature, or- which particularly concerns Treaties with Foreign Powers, do for ■ the moil part (if not-wholly) affecb individuals, and not States-: They require no aid from any State, authority.. This is the gireat leading diiiindlion .between the old articles, of confederation, and the prefentconftitution, The Judicial power is of a peculiar kind.' It is indeed- commenfurate with the ordinary- Legiflative and Executive powers of the general-government,' and the Power which concerns treaties.. But it alfo goes further. Where certain parties are concerned, although the fubjedb ⅛-epntroverfy - does not relate‘to any of ■ the fpecial objedts'of authority of the general Government,, wherein the feparate- foyeveigstie» of the States are blended-in one eommon-mafs of fupre.macy, yet the general Government has a J adicial Authority-⅛-regará to fuel»
 
 *436
 
 fubje£ls of controverfy, and the Legiilature of the
 
 United States
 
 may pafs all laws neceiTary to give fuch Judicial Authority its proper effect. So-far as States under the Conilitution , can be made legally liable to this authority, To far to be fure they are fubordinate to the authority o.f the
 
 United States,
 
 and their individual fovcveignty is in this refpedi limited. But it is limited no farther than the neceiTary execution of fuch authority requires. The authority ejttei is only-to the decifion of contro-veriies in which a State is a party, and providing Taws neceflary for that purpofe: That furely can refer only to fuch controver-fics in which a State
 
 can
 
 be a part.; ; in refpeCt to which, if any queition arifes, it can be determined, according to the principles I have fupported, in 110 other manner than by a reference either to pre-exiitent laws, or laws.paffed under the Conilitution and in conformity to it.
 

 Whatever be the true conilrutSlion of the Conilitution in this particular ; whether it is to be' conftrued as intending merely a transfer of jurifdidtion from one tribunal to another; or as authorifing the Legiilature to pro.vide laws for the decifion of all poffible controverfies in which a State may be.involved with an individual, without regard to any prior exemption; yet it is certain that the Legiilature has in fn£l proceeded upon the former fuppoiition, and not upon the latter. Tor, befide.s what l no-, ticed before as to an exprefs reference to principles and ufages. of law as the guide of our proceeding, it is obfervable that iu initances like this before the Court, this Court hath a concur-r
 
 rent jurifdiclion
 
 only ; the prefent being one of thofe cafes where by-the judicial ⅜£1 this Court hath
 
 original
 
 but not
 
 exclttfive
 
 ju-. rifdidlioni This Coyrt, therefore, under that a£t, can cxercife no authority in fuch initance§, but fuch authority' as from the fubj.ect matter of it .may be exercifed in fome other Court. There are no Courts with which fuch a concurrence can be fug-gefled but the Circuit Courts,. or Courts of tiie different States. Wjth the former it cannot be, for admitting that the Conilitution is'not to have a reftrifitive operation, fo as to confine all cafes in which a State is a party exelufively to the Supreme Court (an opinion to which I am ftrongly inclined), yee there are no. words in the definition of the powers of the Circuit Court which give ⅞ colour to an opinion, that where a fuit is brought againft a State by a citizen of another - State,.the Circuit Court could exercife any j.urifdiclion at all, If they could, however, fuch a jurifdiclion, by the very terms of their authority, could be only concurrent' with the Courts of the feveral States. It follows, ■ therefore, unqueflionably, I'think, that looking at the del óf
 
 Congrefs,
 
 which I confider is on this occafion the limit t>f our authority (whatever further might be conftitutionaly, ⅜⅛⅞⅜⅛) yve ⅜⅞⅜ exercife- no authority in the prefent inftanc e
 
 *437
 
 eonfiftently with the .clear intention of»1 the aft, but fuch as a proper State Court would have been at leaft- comepetent to es> ercife at the time the aft waspafied.
 

 If -therefore, no new remedy be provided (as -plainly is the ' cafe), and confequently we have no other rule to govern us but the principles of rhe pre-exiftent laws, which muft remain in-force till fuperceded by others, then it is • incumbent upon us to enquire, whether previous to the ■ adoption of the Conftitution (which period-, or the period of palling the. law, in refpeft totheobjeft of this enquiry, is perfeftly equal) an-aftion o£ the nature like this before the Court could have been maintained againft one of the States in the
 
 Union
 
 upon the principles of the common law, which I have ihewn to bé alone applicable. If ft could, 'I think it is now maintainable here : If it could not, I think, as the law ftandskit prefent, it is not maintainable 5 whatever opinion may be-entertained,- upon the conftruftlon of the Conftitution,-as to the power of
 
 Congrefs
 
 to authorifé fuch a one. Now I préfume it will not be denied, that in every State in ■ the
 
 Union,
 
 previous to the adoption of the Conftitution, the only common law principles in regard to fuits that were in any. manner admiflible in refpeft to claims againft the State, were; thofe which, in
 
 England
 
 apply to claims againft the crown; there being certainly no' other principles - of the common law which, previous to the adoption of this Conftitution. could, in any manner, or upon any colour, apply to the cafe of a claim agaiiift á.State in its own Courts, where it wa6 folely and completely fo-vereign in-refpeft to fuch cafes at leaft.. Whether that remedy was ftriftly applicable or not, ftill I apprehend there was no othe.r. The only remedy in a cafe like that before the Court, by "which, by any poffiblity, .a fuit can be maintained againft' the crown in-
 
 England,
 
 Or could be at any .period from which the common law, as in force
 
 in America,
 
 could be derived, I believe ⅛ that which is called
 
 a Petition of
 
 right, It is ftated, indeed, in
 
 Com. Dig.'
 
 105. That
 
 “
 
 until the' time.of
 
 Edward
 
 I.the
 
 King
 
 might have been, fued in-all aftions as a common perfon.” And fome authorities are cited for that pofirion, though it is even there ftated as>a doubt. But the fame authority1 adds-r^« hut now none can have an aftion again ft the
 
 King,
 
 but one ihall be put to fue to him by petition.” This appears to-be a quotation or .abftraft from
 
 Tkeloali’s
 
 Digeft, which is alfo one of the authorities quoted in the former cafe. And this book appears (from the law catalogue) to have been printed fo long ago as the year 15.79. The fame doftrine appears (according to a quotation
 
 in Blaclf one’s Commentaries, t VoL
 
 243) to be. ftated ⅛
 
 pinch’s Law
 
 253, the firft edition of winch, it feems, was publiihed in 1579. -This alfo more fully appears in the cafe of the Bankers} and particularly from the celebrated argument of
 
 *438
 
 Somers, in the time’of
 
 W. III.
 
 for, though that cale was ⅛ timately"decided againft Lord
 
 Somers's
 
 opinion, yet the ground; on which the decifion was given no way invalidates the rea-foning- of that argument, fo far as it- refpefts the fimple cafe of a fum of money demandable from the
 
 King,
 
 and not by him-fecured on any particular revenues. The cafe is reported in-
 
 Freeman, Vol.
 
 I.
 
 p.,
 
 331. 5
 
 Mod.
 
 29-.
 
 Ski mi.
 
 601. and lately very elaborately in a fmall pamphlet publiihed by
 
 Mr. Har-grave,
 
 which contains all the reports at length, except
 
 Skinner’s,
 
 together with the argument at large of Lord
 
 Somers
 
 bebdes-fame additional matter.
 

 The fubftance of' the cafe was as follows
 
 -.—King Charier II.
 
 having received large furas of money from bankers, on the credit of the growing produce of the revenue, for the payment-of .which, tallies and orders of. the Exchequer were given,(after-, wards made transferable by ftatute) and the payment of thefe having been afterward poftporied, the
 
 King
 
 at length, in order to relieve the Bankers, in 1677, granted annuities to them out-of the hereditary Excife, equal .to
 
 6
 
 per cent intereft on their fe-veral debts, but redeemable on payment of the principal. This intereft was paid ’till. .1683, but it then became in arrear’, and' continued fo at the Revolution; and the- fuits which were com-, menced to enforce the payment of thefe arrears, were the fub-je£k of this cafe. The Bankers prefented a petition to the'Ba-^ rons ©f the Exchequer,. for the payment-, of the arrears of the-annuities granted ⅜ to which petition- the Attorney General demurred. Two points were made: F-irft, whether the gfSnt out ©f the Excife- was good'; fecorid, whether a petition to the Barons of the Exchequer was a proper remedy. On'the firft point-the whole Court agreed-, that in general the
 
 King
 
 could-alienate-the revenues ef the crown ; but Mr. Baron
 
 Lechmere. differed
 
 from the other Barons, by thinking that this particular, revenue-of the- Excife, was an exception to the general - rule.. Brit all agreed, that the petition was a proper remedy. Judgment was therefore given for the petition by directing payment to the complainants at the receipt of the Exchequer. A writ of Error was brought on this Judgment by the Attorney Cíen eral in the Exchequer-Chamber. There all-,the judges who argued held the grant ‘out of the Excife good. A majority of them, including Lord Chief Juftiee
 
 Holt,
 
 alfo approved of the remedy by petition to the Barons. But, Lord Chief Juft-ice
 
 Treby
 
 was of opinion, ¡that the Barons
 
 qi
 
 the -' Exchequer, were not au&orifed to make order- for payments on- the receipt of the Exchequer,, and, therefore, that the remedy by petition to the Barons was inapplicable. In rhis bpinion Lord
 
 Somers
 
 concurred. A doubt-then arofe, whether the Lord Chancellor and -Lprd High Trea-» forer were, at liberty to gi$e judgment -according- to their ew»
 
 *439
 
 opinion, in oppofitión to that of a majority of the attendant Judges ; in other words, whether the Judges called .by the Lord Chancellor and Lord High Treafu'rer were to be confidered as mere aiiiftants to them without voices. The opinion of thejudges being taken on this point, feven again ft three held, that the Lord Chancellor and Lord Tireafurer were not concluded by the opinions of the Judges, and therefore that the Lord Keeper in the cafe in queftion, there being then no Lord Treafurer, might give judgment according to his own opinion. Lord
 
 Somers
 
 concurring in this idea, reverfed the judgment of the Court of Exchequer. But the cafe was afterwards carried by error into Parliament, and there the Lords reverfed the judgment of the' Exchequer-Chamber,' and affirmed that of the Exchequer. However, notwithftanding this final decifion in favour of the Bankers.and their creditors, it appears by,a,fubfequent ftatute, that they were to receive only one,half of their debts ; the 1,¾ and 14
 
 W.
 
 3, after appropriating certain fums out of the hereditary Excife for public ufes, providing, that in lieu of the annuities granted to die Bankers and all arrears, the hereditary Excife ihould, after, the 26th of
 
 December
 
 1601, be charged with annual fums equal to ail inte.reft of three per cent, till redeemed by payment of one moiety of the principal fums.
 
 Har-grave s cafe of the
 
 Bankers, 1, 2, 3.
 

 Upon perufing the whole of this cafe, thefe inferences naturally follow :—
 
 1ft.
 
 That admitting the authority of that de-cifion in its fulleft extent* yet it is an authority only in refp'ecf to fuch cafes, where letters patent from the crown have been granted for the payment of certain fums out of a particular revenue.
 
 2d.
 
 That fuch relief was grantable in the 'Exchequer, •upon no othér principle than that that Court hud a right to-direct the iifues of the Exchequer as well after the money was depofited there as while (in the- Exchequer language) it was
 
 in iranfitu. 3d.
 
 That fuch an authority could not have beenexer-. ifed by any other Court in
 
 WeJlminJler-'Hall,
 
 or. by any Court that from its particular conftitution had nó conrroul pter the revenues of the
 
 Kingdom,
 
 Lord
 
 C. J. Holt,
 
 arid . Lord
 
 Somers
 
 ;(though they differed in the main point) both agreed in that cafe, that the Court of
 
 King’s
 
 bench could not Tend a .writ to the Treafury.
 
 Hargrave’s -cafe,
 
 45, 89, Coufequently, no fuch remedy, could, finder .ány’circumftances, I apprehgyd, be aflowed in any of- the
 
 American
 
 States; in' none of which it.is preflimed any Court of Juftice hath any exprefs, authority over thc revenues of the State fuch as has been attributed to the Court of Exchequer in
 
 England.
 


 The obfervations of Lord Somers, concerning the general rc- ' medy by petition to'the
 
 King,
 
 -have been extracted and deferred to by fome of the ableft law characters. fine?; particularly by
 
 *440
 
 Lord C. Baron
 
 Comyns
 
 in his digeft. I ihall, therefore, 6⅝» fome of them, as he appears to have taken uncommon pains to collect all. the material learning on the fubject 5 and indeed is faid to have expended feveral hundred. pounds in the procuring of records relative . to th .t cafe.
 
 Hargrave’s preface to the 'cafe of the Bankers.
 


 After citing many authorities, Lord
 
 .Somers
 
 proceeds thus te By all thefe authorities, and,' by many others, which I could 'cite', both ancient and modern, it is plain, that if the fubjedi tvas to recover a rent, or annuity, or other charge from the crown ; whether it was a rent or annuity, originally granted by the
 
 King
 
 ; or iffuing out of. lands, which by fubfequent title came to be in the
 
 King’s
 
 hands '1, in all cafes the remedy to come at it was by -petition to the p.erfon of the
 
 King
 
 : and no other method can be ihewn to have been pra&ifed at common law. Indeed I take it to be generally true, that in all cafes where the fubjecl is in the nature of a
 
 Plaintiff,
 
 to recover any thing from the
 
 King,
 
 his 'only remedy, át common law, is' to fue by
 
 Petition
 
 to the' perfon of the King*. I fay, where the fubjedt comes as a
 
 Plaintiff.
 
 For, as I faid before, when, upon a title .found for the
 
 King
 
 by
 
 office,
 
 the fubjedt comes in to'-traverfe the
 
 King’s
 
 title; or to ihew hrs own right, he comes in the na-1 ture of a Defendant ⅝ and is admitted to interplead in the cafe •with the
 
 King
 
 in defence of his title, which otherwife would be defeated by finding the
 
 office.
 
 And to fhewdhat this was fo, I would take notice of feveral inftane'es. That, in cafes of debts owjng by-the crown, the. fubjedt’s remedy1 was by
 
 Petition,
 
 appears by
 
 Aynejhanis
 
 cafe;
 
 Ryley,.
 
 251. which, is a petition for ¿19. due for work done at
 
 Carnarvon
 
 caftle.
 
 So Ryley
 
 251. The executors of
 
 John Efirateling
 
 petition for
 
 £
 
 132. due to the . teftator fop wages. ' The arifwer is remarkable ; for there fe a' latitude taken, which will very well agree with the notion that fe taken up in this cafe;
 
 Habeant bre. de liberate in Cane. thef. itf earnerar. definí. in partem folutionis.
 
 So the --cafe of
 
 Ter--tvürd'de G-aUys-y
 
 for
 
 fifi- Ryley
 
 4x4. -In like manner in the fame book 253., 33. ^
 
 Ed. I.
 
 feveral parties fue by
 
 petition
 
 for ' money and goods taker fpr the
 
 King’s
 
 ufe; and alfo for wages due to- them ; and for aebts owing to them by the
 
 King.
 
 The anfwer is,
 
 Rex erd'mavit per concilium thefaurarii iff baronum de feas cario, quod fatisfiet iis quam citius fieri poterit ¡, ita quod cónter.» tos fétenebunt.
 
 And this is an anfwer - given to a petition - pre-fen ted to .the
 
 King
 
 in Parliament;' and therefore we havereafon to- conclude it to be warranted by law. ■ They muft be content, apd they ihall be
 
 paid,'quam\ citius-fieri potefit.
 
 1 The’ parties, ■⅛ thefe; cafes, firlt go to the
 
 King'■
 
 by petition-: it is by him ⅛eyj- áre fent to the ' Exchequer ⅛. and it'is by writ under the: great feql, that, the
 
 Exchequer
 
 is knpotVered to adt. Nor cart
 
 *441
 
 *ny fuch writ he found (unlefs in a very few inftaticés, where it is mere matter of account) in which' the Treafurc.r is not joined with the Barons. ‘So fat was ft from heitlg taken to be law at that time, that the Bároits had any original power of paying the
 
 Kitig’s
 
 debts ¾ Or Of commanding annuities, granted by the King.or his progenitors, to he paid, When the per^ fon applied to them for'ftich payment. But perhaps it may be -objected, that i’t is not to be inferred, becaufe petitions were brought- in thefe cafes, that therefore it was of necefiity that the fubjerit ihoukl purftte that c'ourfe, and could take no. other way. It might be reafortable to. require from thofe who obj-edfc thus, that they fhould produce feme precedente at leaft, of another remedy taken. ' But I think there is a good ánfwer to he given to this obje&ion. All thefe petitions which I havé mentioned, aVe after the
 
 St at.
 
 8
 
 Ed. I. Ryley
 
 442, where no*-tice is taken
 
 that the hfinefs of Parliament is interrupted by a multitude of petitions, ‘which might be redr fid by the 'Chancellor and fu/lices.
 
 Wherefore it fe thereby-enaftedj
 
 thit petitions which touch the fealfhall copie firf to the Chancellor ; 'thofe which touch the-Exchequer, to the Exchequer ; and thofe which tfiucb the Juf-
 
 tices,
 
 or the iiku of,the land, fhould ‘come t0^4he fuflices ; and if the bujinifs.be fo great, or ft dé grace that Chancellor, or others,Cannot do them without the King, then the- ‘¡‘«fti ion's Jhall be brought before the King to- know his pletifure
 
 >
 
 fo that m petitions come before the King and his Council, but by the hand's if the Chancellor, and -other chief Minifers
 
 ⅜
 
 that the King and Ms Council may attend: the great affairs of the King’s Reálm, and his favereigñ dominions.”
 
 This laW being made; there is reafon to conclude that all petitions brought before the
 
 King,
 
 or
 
 Parliament
 
 after this time, arid añfwered there, were brought according to .thfe method of this law and Were of the nature of fuch petitions-ás ■ought to be brought before the perfoti of the
 
 King.
 
 And'that-petitions did ,lie for a' chattel, as well as for a freehold; does appear 37
 
 Rffi pl
 
 ii.
 
 Bro.' Pet-.
 
 17* If tenant by the ftatuté merchant be oufted, he may have petition, aed íhall be reftqi-ech
 
 Vide
 
 9
 
 H.
 
 4. ¿p
 
 Bró. Pet. p.
 
 91
 
 H. 6.
 
 at*
 
 Bro.,- Pet-.
 
 2. .If the fubjeriftbe oufted of his term, - he íhall have hi* petition. 7.
 
 H.r¡. ii.
 
 Of a chattel real a pa»’íhall have hfci peti* tion of right, as of his freehold* 34.
 
 H. ¡i. Bro. Pet.
 
 A man íhall have a petition of right for. goods and chattels ; and the
 
 King
 
 indorfes it in the uftial form. It is faid indeed; s
 
 H.
 
 7. 3.
 
 Bro. Pet.
 
 19. that a petition will not lie of-4 ehaitel. Arid, admitting there eyas any- doubt as to' that point, i a the prefent ftiit we are in the cafe of a freehold.” Lord
 
 Somerds
 
 argument in
 
 Hargrave’s cafe of the Bankers,
 
 103
 
 to
 
 105.
 

 The folitary cafe, noticed at the concluí]on of Lord
 
 Somers’s
 
 arguments
 
 “
 
 that a petitiQn will not lie of a-'chattel,” certainly ' '
 
 *442
 
 is deferving of no confederation, oppofed to fo many, other in* fiances mentioned,. and unrecognized (as Í believe it is) by any óther authority either anc'ierit or modern, whereas the contrary, it appears to me, has long been received and eflnbliíhed law¿ In
 
 Comyns’s Dig*
 
 4
 
 Vol.
 
 458. It is faid exprefsly « fuit-ihall be to the
 
 King
 
 by petition, for
 
 goods'
 
 as well as for
 
 land?
 
 He cites
 
 Staundf. Prar.
 
 75.
 
 b.
 
 72.
 
 b.
 
 for his autiority, ánd takes no notice of any authority to the contrary. The fame dodtrine is alfo laid down with' equal ex'plicitnefs, and without noticing any diftindtion whatever, in
 
 Blacone’s Commentaries,
 
 3.
 
 Vol*
 
 256-. where he points out the petition of „ghf as one of the common law methods of obtaining poffeffion or reftitution froto the crown, either of real or
 
 perfonal
 
 property; and fays exprefsly the petition of right “ is of ufe where the
 
 King
 
 is in full poffeffion of any hereditaments or ¿hattels, and the petitioner fuggefts fuch a right as controverts the title of, the crown, grounded on fails difclofed in the petition i'tfelf.”
 

 I leave out of the argument, from which I have made fo long a quotation, every thingconcerning the reftridtion on the Exchequer, fo far as it concerned the cafe then before the Court, as Lord
 
 Somers
 
 (although more perhaps by weight of authority than reafoning) was over-ruled in tha,t particular. As fo all others' I confider the authorities on which he relied, and his de-■dudlion from them, to be unimpeached.
 

 Blachflone, in the firft volume , of his commentaries (p. 203), fpeaking of demands in point of property, upon the
 
 King,
 
 ftates the general' remedy thus :—If any pérfon has,'in point .of property, a'juft demand upon the
 
 King,
 
 he muff petition him in his'Court of Chancery, where his Chancellor will adminif-ter right, asa matter of grace, though not-upon^compulfion. (For which he cites
 
 Finch L.
 
 255.). “ And this is exadtly con-donan t to what is laid down by the writers on. natural law— A fubjedt, fay
 
 PuffendorJ,
 
 .1|> long «a he continues a fubjedt, hath no way to
 
 oblige
 
 his
 
 Prince
 
 to give him his due when he refufes, it 5 though no wife
 
 Prince
 
 will ever refufe to Hand to a lawful contradi. And if the
 
 Prince
 
 gives the fubjedt kiave to- enter an adtion againft him upon fuch contradi, in his own Courts, the adtion. itfelf proceeds rather upon natural equity, than upon the)municipal laws. For the end of fuch adtion is not to
 
 compel
 
 the
 
 Prince
 
 to obferve die contradi, but to
 
 purjuade
 
 him.”
 

 It appears, that when á petition to the perfpp of the
 
 King
 
 is properly prefented, the ufüal way is for the
 
 King
 
 to indorfe or underwrite,
 
 foit droit fait’ al partie,
 
 (let right .be.done to the party); upon which, unlefs the Attorney-General confeffes the-luggeffion,a commiffion is iffued to enquire into the truth of it t after the .return of which, the
 
 King’s
 
 attorney is at liberty to
 
 *443
 
 plead In bar, and the merits ihall be determined upon iíTúe or demurrer, as in fuits between fubjecl and fubjecl. If the,Attorney-Gfeneral confdies tb°. fuggeftion there is ho occafion for a commiffion, his admiffion of the truth of the facts being equally conclufive as if they had been found by a jury.—See 3
 
 Black-fiends Commentaries
 
 256. and 4
 
 -Com. Dig.
 
 458.. and the authorities there cited. Though the above mentioned indorfe-' tnent be the ufual one, Lord
 
 Somers,
 
 in the courfe of his. voluminous fearch, difcovered a variety ©f other anfwers to what he confidered were unqueftionable petitions of right; in refpect to which he obferves : “ The truth is, the manner of anfwer-ing petitions to the perfon of the
 
 King
 
 was yery various;-which variety did fometimes arife from the conclufion of the party's petition : fometimes from the nature of the thing ; and fome-times from favour to the perfon ; and according as the indorfement was, the party was lent into Chancery, or the other Courts. If the indorfement was general,
 
 foit droit fait al partie,
 
 it mult be delivered to the Chancellor of
 
 England,
 
 and then a-commif-fion was to go tq find -the
 
 right
 
 p£ the party ; and that being found, fo that there was a record fo Aim, thus warranted, he is let in to interplead with the
 
 King
 
 : but if. the indorfement was fpecial, then the proceeding was to be according, to the indorfement in any other Court. This is. fully explained by
 
 Stamford,
 
 (StaundfortJ. in his treatife of the
 
 Prerog. c. 21.
 
 The cafe
 
 Mich,
 
 xo
 
 H.
 
 4. 4.
 
 no.-
 
 '8. is full as to this-matter. The
 
 King
 
 recovers in a
 
 fihiare impedit
 
 by default againil one who was never fummoned.j the pa,r,ty cannot have a
 
 writ of deceit,
 
 without a petition. If then, fays the book, he concludes his petition' generally «
 
 que le Roy ¡ui face
 
 droit” (that the
 
 King
 
 will cauie right to be done)- and the anfwer be general, it mull go into the
 
 Chancery,
 
 that, the right may inquired of by commiffion
 
 \
 
 and, upon the inquetl found, an original writ muftbe dlre£led to the j uftices to examine the
 
 deceit
 
 othenvife, the Juftices, benre whom the fuit was, cannot meddle : But if he conclude his -oetition efpecially,.
 
 that it may pleafe his Uigbiefs to command-b.is. Jufiices. to., proceed to. the examination,
 
 and the indorfement be accordingly,
 
 that-had
 
 given the Juftices a jurifdiclion. They might in fuch cafe have proceeded upon the petition without any commiffipn, or any writ to be fued out; the petition and anlwer indorfed giving afufficient juiifdiftion to the Court to-which it was directed. And,as the book I have mentioned, proves this, fo many, other authorities ’may be cited.” lie accordingly mentions many other mftances, Immaterial to be recat-eo here, particularly remarking a very extraordinary difference irt ■the cafe belonging to the revenue, in regard to which he laid,, be thought there was not an inftance to be found where peti-¾⅛⅝⅜ were anfwcred,
 
 fit droit, fait aux parties
 
 (let right be done
 
 *444
 
 to the parties): The ufual reference appears to have been to ,&*. Treafurer' and Barons, commanding them to do juftice : Sometimes a writ under the great feal was directed to’- be iffued to. them for that purpofe :' Sometimes a writ from the Chancery diréñing payment' <sf Aoney immediately, witliout taking notice of the Barons. And other, varieties appear to. have taken plaCe'. See
 
 Hargrave's safe- of the- Rankers, p.
 
 73,
 
 is’feq.
 
 But in all cafqs of petition of right, of 'whatever nature is the demand, • I think it is clear b'eyojid all doubt,
 
 that there. mujl he fame indorfement or order of the King hitrfelf to warrant any further proceedings.
 
 The remedy, in the language of
 
 Blachjlone,
 
 'being a
 
 matter of grace,
 
 atld not
 
 on. compülftan.
 


 In a very ⅛⅛'cafe in
 
 England,
 
 this point was incidentally difeuffed. The cafe I refer to, is the cafe of
 
 Macbeath
 
 againft
 
 Haldimatt4,
 
 reported-
 
 if - Dun ford
 
 ⅛*1
 
 Eajl
 
 172.'- The afftion Vas againft the'Defendant, for goods ftímiíhed by the Defendant’s order in
 
 Canada.,
 
 whé» the Defendant was Governor of'
 
 Quebec.
 
 The defence Was, that the Plaintiff was employed by the Defendant in his official capacity, and not úp on, his perfonal. credit, and that $he goods being therefore furnifnedfor-the ufe of. Governm.enf;, arid the Defendant not having undertaken personally to 'pay; he was not lfeble,. This defence, Was fet up at the trial, on the-plea of the general iffaé, and the Jury, by Ju,dgfe
 
 Buller’s
 
 direction, found a verdwft for the Defendant. Ugon a motion fei anew trial he reported particularly all the faifts’given.iri evidence, and faidhis opinion had been at.the trial that the Plaintiff fhould be nbmfuited
 
 i
 
 ‘i but the Plaintiff’s counfel appearing-for their client-, when 'he was, called, he left the queftibri. to the'jury, telling them that they were bound to find for the- Defendant in point of law,. And upon t-heir a iking him .whether, in the event of the Defendant not being liable, any other perfon was, he told them,- that was no part of their con finer at ion, But being willing to give them any information, he added, that be-was of opinion, that if the Plaintiff’s demands were- juft, his proper remedy Was by a Petition iff right to the crpwn. On which' they found a verdidl for the Defendant,, The rule for-granting- a new trial was moved "for, on the mifdire&ion of - two. points. 1 ft. That the Defendant had by his own condufit made himfelf liable, which queftion fhould have been left to the jury. 2dly. That the Plaintiff had no remedy againft th'é crown by a .Petition of right, on the fuppbfition of which the Jury had been induced to give their verdift.”- “ Lord
 
 Mansfield,
 
 Chief Juftice, now declared', that the Court did not feel it neceffary for them to give any opinion on the fecond ground. His Lordihip faid that great difference had arifen fince the revolution with re-fpe£l tp the expenditure of the public money-.' Before that period, aft the public fupplieS were' given to. the
 
 King,
 
 -who in
 
 *445
 
 |ifs individual capacity contradled for all expences. He alone Jiad the difpofition of the public money. But fincethat tíme the fupplies hi d been appropríáted by Parliament to particular purpofes,' and now* whoever advances money for the public fervice trufes to the farth of Parliament. That according to the tenor of Lord
 
 Somers’s
 
 argument in the Bankers cafe, though a Petition of right would lie, yet it would probably produce no effedl. No benefit was ever derived from it in the Bankers cafe and Parliament was afterwards obliged to provide a particular fund for the payment óf thofe debts. Whether, however, this alteration in the mode o f-diftributing the fupplies had made ' any difference in the law upon this fubjedl, it was unneceifary to determine. '; at any rate, if there were a;recovery againft the crown, application muft he made to,Parliament, arid it would corpe under the head of fupplies for the year.? The motion was afterwards argued op the other ground (with which I have at prefent nothing to do) and rejedled»
 

 In the old authorities, there doe's not appear any diftindlion, between debts that might be contradled perfonally by the-
 
 King,
 
 for his own private ufe, and fuch as he contradled in his political capacity for the fervice of the kingdom. As he had however then fixed and independent revenue's, upon which depended the ordinary fupport of Government, as well as the expenditure for his own private occafions, probably no material diftindlion at that time exifted, or could eafily be made. A very - important-diftindlion may however perhaps now fubfift between the'two cafes, for the teafons intimated by Lord
 
 Mansfield
 
 ; fince the whole fupport of Government depends now on Parliamentary provifions, and, except in the cafe of the civil lift, thofe for the raoft part annual. •
 

 Thus, it appears, that in
 
 England
 
 even in cafe of a private debt contradled by the
 
 King,
 
 in his own perfon, there is no remedy but by - petition, .which muft receive his exprefs fandtion, other-wife there can be no proceeding upon it. If die debt contradl-ed be avowedly for the pubüc ufes of Government, it is at lead doubtful whether that remedy will lie, and if it will, it remains afterwards in the power of.Parliament to provide for it or not among the current fupplies of the year.
 

 Now let us-confider the cafe of a debt due from a State; None can, I apprehend, bfe diredlly,claimed but in the following inftances. lit. In cafe of a Contradi with- the Legifiature it-' felf. 2d. In. cafe of a contradi with the Executive, or any other perfon, in confequencepf an exprefs authority from the Legif-laturej 3d. In cafe of a contradi with the Executive without any fpecnll authority. In
 
 thefiifi. andfecond
 
 cafes, the contradi is evidently made on the public, faith alone. Every man muft 4now that noTuit dan .lie againft a Ldgiflative body. His,only
 
 *446
 
 dependence, therefore can be, that'the Legiflature on principJe& of public duty, will make a provifion for the execution of their-own contrails, and if that fails, whatever reproach
 
 the
 
 Legifla-ture may incur, the cafe is certainly without remedy in any o£ the Court a of the State. It never was pretended, evert in the cafe of the crown in England» that if any contradi; was made with Parliament, or with the crown by virtue of an authority from Parliament, that a Petition to the crown would in fuch cafe lie. In the
 
 third
 
 cafe, a contradi with the Governor of a State without any fpecial authority. This cafe is entirely different from fuch a contradi made with the crown in
 
 England.
 
 The. crown there has very high prerogatives, in many inilances is a. kind of truftee for the public interdi, in all cafes,' reprefents the fovereignty of the
 
 Kingdom, and■ is the only authority •which can-fue j>r be fued in any mannerron behalf of the Kingdom in any Court• 'of JuJliee.
 
 A Governor of a State is a mere Executive officer;, his general authority very narrowly limited by the Conflitution of the State ⅜ with' no undefined or difputabte prerogatives without power to effect one finding of the public money, but as he is authorifed under the Conftitution, or by a particular law having no colour to reprefent the fovereignty of the State, fo as to bind it in any manner to its prejudice, unlefs fpecially autho-rifed' thereto. ■ And therefore all who contradi with him do it at their own peril, and, are bound to fee (or take the confe-quence of their own indifcretion) that he has Uriel authority for any contradi' he makes. Of courfe fuch contradi when fo authorifed will come within the defeription I mentioned of cafes where public faith alone is the ground of relief, and the Le~. "illative body the only one that can afford a remedy, which fro-m the very nature of it mull be the effedt of its diferetion, and' not of any coinpulfory procefs. If however any fuch cafes were iimilar toriiofe which would entitle a party fo relief by-•petition to
 
 the'King
 
 in
 
 England,
 
 that Petition being only preventable to him as he is the fovereign of the Kingdomy fo. far as analogy is to take place, fuch Petition in
 
 a State
 
 could
 
 only.
 
 be prefented to the fovereign power, which furely the, Governor is not. The only conliituted authority to which.fuch an application, could with any propriety be made, muil undoubtedly be the Legiflature, wbofe exprefs. content, upon the principle of analogy, would be neeeflary to any further proceeding. So that this bringü us (though by a different route)- to the fame-goal ;
 
 Cfhc dijer’etion and good faith of the Legijlative body.
 


 There • is no other part of- the common law, befidts that which I have eonfktered, which cnnby.any.perfon be pretended, in any manner to apply to this cafe, but that which concerns, corporations. ’.The applicability of this, the Attorney-General, with great candour, has cxprefsly waved. Rutas it may be
 
 *447
 
 utged-on other occafions, and as I wiih to give the fulleft fa-tisfadlion, I will fay a few words to that dodtrine. Suppofe, therefore^ it-ihould be objedied, that the reáfoning I have now «fed is not conclufive, becaufe, inafmuch as a State is made fubjedl .tó the judicial power of
 
 Congrefs,
 
 its fcvereignty mail not ftand in the,way of the proper exercife of that power, . and, therefore, in all fuch cafes (though in no other) a State can only be confidered as a fubordinate corpdrntion merely. £ anfwer,:' ill. That this conftrudlion can only be allowed, at the utriioft, upon the fuppofition that the judicial authority of the
 
 United States,
 
 as it refpedls States, cannot be effedluaced, without proceeding againft them in that light: a pofition I’-by ■ ;no means admit. 2d* "That according to the principles I have ■íupportéd in this argument, admitting that States ought tobe fo confidered for that purpoíé, an adl of .the Legiflature is ne* cefiary to give effedt to fuch a conftrudlion, unlefs the old doctrine concerning corporations will naturally apply to this particular cafe. gtf. That as it is evident the add of
 
 Congrefs
 
 has not made any-fpecial provifion in this cafe, grounded on any "-ch conftrudlion, fo it is to my'- mind perfectly clear that we have . no authority,. upon any fuppofed analogy between the two cafes, to apply the. common dodtrine concerning ■ corporations* to the important cafe now before the Court. I take it for granted, • that when any part of an antient law is to. be applied to a new cafe the' circumftanCes of- the new cafe mail agree in all effential points with the circumftancep of the old cafes to which -that antient law was formerly appropriated. ÍSTow there are, in my opinion, the moil effential differences between the old cafesof corporations to which the law intimated has reference, and the great and extraordinary cafe of States feparately poffefling, as to every thing limply relating to themfelves, the fulleft powers of fovereignty, and yet in fome .other defined particulars fubjedfc to a fuperior power compofed out of themfelves for the common welfare of the whole. The only law Concerning corporations, to which! conceive the lead reference is to be had, is the common law of
 
 England
 
 on that fubjedl. I need not repeat the obfervations I made in refpedfc to the operation Of that law in this country. The word “ corporations,” in its largeft fenfe, - has a more extenfive meaning than people generally ar.e • aware of. Any body politic (foie or aggregate) whether its power be reftridfced or tranfeendsmt, is in this fenfe “ a corporation.” The
 
 King,
 
 accordingly, in
 
 England
 
 is called a corporation, id ■
 
 Co.
 
 29.
 
 b.
 
 So alio* by a very refpedlable.author
 
 (Sheppard,
 
 hi his abridgement, 1
 
 Vol. 431.J
 
 is the Parliament itfelf. In this extenfive fenfe, not only each State fingly, «but even the
 
 United States razy
 
 without impropriety be termed “ corporations.” ■ f have* therefore, in .contradiftindlion to this large and indefinite
 
 *448
 
 term, ufed thé term « fubordinate corporations,” meaning ft* referió fuch only (as alone capable of the flighted application, for the purpofe of the objection) whofe creation and whofe powers-are limited by law.
 

 The differences between fuch corporations, and the fevera! States in the'
 
 -Union,
 
 as relative to the general Government, ate Very obvious' in the following particulars, ift. A corporation is a mere creature of the
 
 King,
 
 or of .Parliament 5 very rarely of the latter; moft ufually of the former only-. It owes its exiftence, its name, and its laws, (except fuch laws as
 
 are
 
 neceffarily incident to all corporations merely as fuch) to the Authority which create'it» A State does-not owe its origin to the Govtrnment of the'
 
 United
 
 States, in the higheft or in any of its branches. It was in exiftence before it. It derives its authority from the fame pure and' facred fource as itfelf:
 
 The voluntary and deliberate choice of the people, 2d,
 
 A corporation can do no a£t but what is fubjeft to the revifion either of a Court of Juftice, or of fome other authority within the Government. A State is, altogether exempt from the jurifdidHon of the Courts of the
 
 United States,
 
 or from any other exterior authority, unlefs in the fpecial inftances where the general Government has power derived from the Conftitution itfelf.-
 
 3d.
 
 A corporation i;s -altogether dependant on that Government tó which it owes its exiftence. Its charter may be forfeited by ábufe. Its: authority may be annihilated, without abufe, by an act of the Legiflátíye body. A State, though fubjeft in certain fpecifted particulars to the authority of the Government of the
 
 United States,
 
 is in every other rfefpedt totally independent upon it. The people of the State ' Created, the people of the State can only change, its Conftitution» ■ Upon this power there is no other limitation but that impofed by the Conftitution ol the
 
 United States ; tkat 'it mtijl be of the Republican
 
 form. I omit minuter diftindtions. Thefe are fo palpable, that I never can admit that a fyftem of law calculated for one of thefe cafes is to be appllied,
 
 as a matter of courfi,-
 
 to the other, without admitting (as I conceive) that the diftindft boundaries of law and Legiflation1 may be confounded, in a manner that would' make Courts arbitrary, ‘And in effedi
 
 makers of a new law,
 
 inftead of being (as certainly they alone ought to be)
 
 expoftors of an ex~ ifinjr bne..
 
 If ftil! it ihould be infifted, that though a States Cannot be confidered upon the fame footing as the municipal corporations I have been confidering, yet, as relative to the; powers of the General Government it muft be deemed in fome .meafure dependent;admitting that to be the cafe (which to be fure is, fo' far as the neceflary execution of the powers of th© General Government extends ) yet in whatever character this may place a State, this can only afford areafan for a new law,
 
 *449
 
 Calculated to effeftuate. the power? tí she Qenerál Gov.erar ment in this new cafe : But it Sordino- reafon whatever for the Court adufitting a new a ¿lion t<? fit ,,⅜ cafe, to which no old ones apply, when the
 
 application
 
 of Jaw, not the.
 
 making
 
 of it, is the foie province of the Court;
 

 I have now, I think, eftablilhed the following; particulars.~⅜>
 
 ift.
 
 That the Conftitution, fo far as it refpeéfs the.-judicial an* thority, can only he carried into eíFeét by ait's of the Regiflature. appointing Courts, and prefqribing their :tnethods of proceed--ing.
 
 2d.
 
 That
 
 Congref,
 
 has provided no new.lew in tegarci ta this cafe, hut exprefaly referred as to -the old.. 3 2, That there aré no principles of ..the old law, to which we mu ft have irecourfe, that in any Planner aitthorife the- .prefent lhiV either by precedent or by analogy. The confequenee of .which, in my «pinion," clearly is, that the fuit in queftion cannot- be main* tained, nor, of courfe, the motion "made upon it be complied with.
 

 From.- the manner in which I have viewed -tbisdubjeft,. fo different from that in which it has been contemplated by the Attorney General, it is evident, that,I have- not had, occafion-to notice many arguments offered by the, Attorney General, which certainly were very proper, as to' his extended view of the cafe, but do not affecft mine. No part of -- the Raw of Nations can apply to this cafe, as.,1 apprehend, .but- that part which is. termed “ The Conventional Law :of Nations ⅜” nor can this-any otherwife apply than as funaiihing rules of - interpreta* tion,- fincc unqueftionably the people of the
 
 United States
 
 had a right to form what kind of union, and upon what terms they pleafed, without reference to any former examples. If upon a fair conftru£tion of the Conftitution of the
 
 United
 
 States, the power contended for really exifts, it undoubtedly may bé ex* ercifed, though it be a power of the firft impreffion. If ⅛' does not exift, upon that authority, ten thoufand examples of fimilar powers would not warrant ies affhwptign. So far as this great queftion affedls the Conftitution itfelf, if the .prefent afforded, confiftently with the particular grounds of my ¿pinion, a .proper occafion for a decifion upon it, I would ■ not ihrink from its difeuffion. But it is of extreme moment that no Judge ftiould raihly commit himfélf upon important queftions, which it is unneceffary for him to decide. • ‘My opinion being, that even if the Conftitution would admit of ..the exercife of fuch a power, a new law is neceifary for the purpofe, fince no part of the exifting law applies, this alone is fufficient to juf* tify my determination in the prefent cafe. So much, however, has been faid on, the Conftitution, that it may not be improper to intimate that my prefent opinion is.ftrongly againfi any con-ftru&ion of it, which will admit, under any circumftances. * compulfive fait againfi a State for the recovery of 'money. R
 
 *450
 
 think every word in the Conftitution may have its full effedl without! nvolving this confequence, and that' nothing but ex-prefs words, or an infurmountable implication (neither of which I'confider, can be found in this .cafe) would authorife the de-duftion of fo high a power. This opinion I hold, however^ with alijthe referve proper for one, which, according to my fen. t,iments in this cafe,. may be deemed in fomé meafure extra-judicial. With regard to the policy of maintaining fuch fuits, that is not for this Court to coniider, unlefs the point in all otlier re-fpecfts was very doubtful. Policy might then be argued from with a view to preponderate the judgment. Upon the queftion before us, I have no doubt. I have therefore nothing to do with the policy. But I confefs, if I was at liberty to fpeak on that fubjedl, my opinion on the policy of . the cafe would alfo differ from that of the Attorney General. It is, however, a ■delicate topic. I pray to God, that if the Attorney General’s do&rine, as to the law, be eftabliihed by the judgment of this Court, all the good he predifts from it- may take place, and none of the evils with' which, I' have the concern to fay, it--appears to me to be pregnant.
 

 Blair,
 
 Jujlice.
 
 In confidering this important cafe, I have thought it belt to pafs over all the ftriftures which have been made on the various European confederations ; becaufe, as, on the one hand, their likenefs to our-own is not fufficiently clofs to juftify any analogical application ; fo, on the' other, they are' utterly deftitute of any binding authority here. The Confti-tution of t(ie
 
 United States
 
 is the only fountain from which.I lhall draw; the only authority to which I fhall appeal. Whatever be the true language of that, it is obligatory upon every member of the
 
 Union ;
 
 for, no State could have become a member, but by an adoption of it by the people of that State. .What then do-we find there. requiring the fubmiffion of individual States to the judicial authority* of the
 
 United States ?
 
 This is éxpréfsly extended, among other things, to controverfies between a State and citizens of another State. Is then the cafe before us one of that defcription ? Undoubtedly it is, unlefs it may be a fufficient denial to fay, that it is a ■ cóntroverfy between a citizen of one State and another State. Can this change of order be an effential change in the thing intended ? And is this' alone a fufficient ground from which to conclude, that the jurifdiSion of this Court reaches, the cafe where a State. is Plaintiff’, but not where it is Defendant
 
 ?
 
 In this latter cafe, ihould any man be afked, "whether it -was not a cpn-troverfy- between a State and citizen of another State, muft not anfwer be in the affirmative ? A difpute between A. and B. •sturdy a difpute between B. and A. Both cafes, I havens doubt,, were intended ; and probably the State was firil named,
 
 *451
 
 in refpeft to the dignity of a State. But that.very dignity feems to have been thought a fufhcient reafoii for confining the fenfe to the cafe where a State is plaintiff. It .is, however,. a fuffi-cient anfwer to fay, that our Conftitution 'moil certainly contemplates,in another banch of, the cafes enumerated, the maintaining a jurifdiftion againft a State, ás Defendant; this is unequivocally afferted when the judicial power of the
 
 United States
 
 is extended to controverfies between two or more States ; for there, a State múft, of necefiity, be a Defendant. It is extended alfo, to controverfies between a State and foreign States ; and if the argument taken from the order of defignation were good, it would be meant here, that this Court might have cognizance of a fuit, where ⅛ State is Plaintiff, and. feme foreign State a Defendant, but not where a foreign State brings a fuit againft a State. This, however, not to mention that, the in-ftances may rarely occur, when a State may have an opportunity of fuing in the
 
 American
 
 Courts a foreign State; feemS to lofe fight of the policy which, no doubt, fuggefted this provi-fion, viz. That no State in the
 
 Union
 
 ihould, by withholding juftice, have it in its power to embroil the-Whole confederacy in difputesof another nature. But if a foreign State, though laft named, may, neverthelefs, be a Plaintiff againft an individual State, how can it be faid, that a controverfy between a State and a citjzen of another State means, ,from thfe mere force of the order of the words, only fuch cafes .where a State is Plaintiff? After defcribing, generally, the judicial' powers of the
 
 United States,
 
 the Conftitution goes on to fpeak of it diftribu-tively, and gives to the, Supreme Court original jurifdiftion, among other inftances, in the cafe where a State {hall be a
 
 party;
 
 but is not' a State a party as well in the. condition of a Defeii-’dant as in that of a Plaintiff ? -And is the whole force of that expreffion fatisfie'd by confining its meaning to the cafe of a Plaintiff-State ? . It feems to me, that if this Court fhould, re-fufe to .hold jurifdiftion of a cafe where a.State is. Defendant, it would renounce part of the authority conferred, and, confe-quently,. partof the duty impofed. on it-by the Conftitution 5, becaufe it would be a refufal to take cognizance of a cafe where’
 
 a State is a party.
 
 Nor does the jurifdiftion of this Court, in relation to a State, feem to me to be queftionable, on the. ground that
 
 Congrefs
 
 has not provided any form of execution, or pointed out any mode of making the judgment againft a State, effeftual; the argument
 
 ab' in uiili
 
 may weigh much in. cafes depending upon the conftruftion of doubtful Legiilative afts, hut can have no force,; I, think, againft the clear and pofi-tive directions of lan aft of
 
 Congrejs■
 
 and of the Conftitution. Let us go on as'far asi we can ; and if, at the .end of the bu» finéis, notwithftanding.tlie. powers given us in' the-’14th feftion
 
 *452
 
 of the judicial law, we meet difficulties- infurmountable t<9 -uS, tve muft-leave it to thofe 'departments- of Government which "¿have higher pow.ers ; to which, however* there may be no ne-ceffity to have recourfe : Is it altogether a vainexpefiatioft, that a State may have other motives than fuch as arife from the ap-prehenfion of coercion, to carry into execution- 'a judgment of .the Supreme Court of the
 
 United
 
 States, though not- conformable to their own .ideas of jufticef Bell des, this argument takes it for granted, that the judgment of the Court will be 'againft the State 5 it poifibly5- may be ⅛ favor of the State ; and the difficulty vaniffies. Should judgment be given againft- the Plaintiff, could it be faid to be void, beeaufe extra-judicial ? If the Plaintiff grounding himfelf upon that notion, feould renew his fuit againft the State, in any mode in which fee may permitherfelf tobe feed in her own Courts, would the Attor-. néy General for the State be obliged to go again into the merits of the-Cafe, beeaufe the matter, when here, was
 
 coram non ju-dies ?
 
 Might he not rely ujfen • the judgment given by this. Court in-bar of the new luit? Tome it feems-clear that he might. And if a State may be brought before this Court, as at Defendant, I lee no reafon fot confining the Plaintiff to- proceed by way of .petition
 
 -,
 
 indeed there would even feerrt to be an-impropriety in proceeding in that mode. When fovereigns are feed in their own Courts, fech--a method may have-been ef-tablifeed as the moft refpeftful form of demand ; but we are trot now in a State-Court
 
 %
 
 and if fovereignty be an exemption from fuit in any other than the fovereign’s own Courts, it follows that when a State, by adopting the Conftitutioh, has agreed to be amenable to the judicial power of the
 
 United
 
 States,' fee has, in that refpeef, givenr-up her right of fovereignty.
 

 With refpetl to-the fervicé of .the femmons to appear, the manner in which it has been ferved feems to be as proper as any which could be devifed for the purpofe of giving notice of the fuit, which is the end propofed by it, the Governor being the head of the Executive Department, and the Attorney General the law-officer, who generally reprefents the State in legal proceedings : And this mode is the lefs liable to exception, when it is confidered, that- in the fuit brought in this Court by the State of
 
 Georgia
 
 againft Brailsford
 
 *
 
 and others, it is conceived in the name of the Governor in behalf of the State. If the opinion which-I have delivered, refpe&ing the liability of aStatetobe feed in -this Court, feould be the opinion of the Court, - it will come in courfe to confider, what is the proper, ftep to be taken for inducing appearance, none having, been yét entered in behalf ■of the Defendant. A judgment' by default, in the prefent ftage of the bufinefs,- and writ of enquiry of damages, would
 
 *453
 
 be too precipitate in arty cafe, and too incompatible with the dignity of a State in this. Farther opportunity of appearing to defend the fait ought to be given. The conditional order moved for the laft term, the confideration of which was deferred to this* feems to me to be. a very proper mode;, it will warn the State of the meditated confequence of a refufal to appear, and give an opportunity for more deliberate 'confideration. The order, I think, ihould be thus: ‘ Ordered, that
 
 c
 
 unlfefs the State 'of
 
 Georgia
 
 ihould, after due notice' of this ‘ order, by a fervice thereof upon-the Governor and Attorney * General of the faid State, caufe an appearance to be entered
 
 i
 
 in behalf of the State, on the 5th day of the next Term, or
 
 *
 
 then ihew caufe to the contrary, judgment be,then entered up 4 againft the State, and a writ of enquiry of damages be * awarded.’
 

 Wilson,
 
 JuJlice.
 


 This is a cafe of uncommon magnitude. £>ne of the parties to it is a State; certainly refpe&able, claiming to be
 
 fovereign.
 
 The queftion to be determined is, whether this State, fo refpe¿table, and whofe claim foars fo high* is amenable to the jurifdi&ion of the Supreme Court of thé
 
 United States ?
 
 This ■ queftion, important in itfelf, will depend on others, more important ftill; and. may, perhaps, be ultimately refolved into one, no left
 
 radical
 
 than this—“ do the people of the
 
 United States
 
 form a Nation
 

 A caufe fo confpicuous and interefting, Ihould be carefully and accurately viewed from every poffible point of fight; I ihall examine it;
 
 ijl.
 
 By the principles of general jurifprudence.
 
 id.
 
 By the laws and praéHce of particular States and
 
 kingdoms.
 
 From- the law of nations little or no illuftration of this fabje£t cap be expected. Bythatlawthe feveral States and Governments fpread over' our globe, are confidered as forming a
 
 fociety,
 
 not u nation. It has only been by a very few comprehenfive minds, fuch as thofe of
 
 Elizabeth
 
 and the
 
 Fourth Henry,
 
 that this laft great idea has been even contemplated.
 
 3dly.
 
 and chiefly, I fhall examine the important queition before us, by the Conftituion of the
 
 United
 
 States, and the legitimate refult of that valuable inftrument.
 

 I. I am, firft, to examine this queftion by the principles of. general jurifprudence. What Í ihall fay upon this head, I introduce by the obiervation of an original and profound writer, who, in the philofophy of
 
 wind,
 
 and all the fcienCes attendant on this
 
 prime
 
 one, has formed an sera not lefs remarkable, and far more illuftrious, than that formed by tha juftly celebrated
 
 Bacon,
 
 in another fcience, not profecuted with lefs ability, but lefs dignified as to its. object ; I mean the philofophy of
 
 matter.
 
 Dr.
 
 Reid,
 
 in his excellent enquiry into the human mind, on the principles of
 
 common
 
 fenfe, fpeaking of the fceptical and il
 
 *454
 
 liberal philofophy, which under bold, but falfe, pretentions. t« prevailed in many parts of
 
 Europe
 
 before he wrote, makes the following judicious remark : “.The language of philo--ibphers, with regara to the original ■ faculties of the mind, ⅛ fo adaptéd to. the prevailing fyftem, that it cannot fit any other ⅝ like a coat drat fits the man for whom it was made, .and fhews him to advantage, which yet will, fit very aukward upon one of a different; make,, although as handfome and well proportioned. It is hardly poffible to make any innovation in our philofophy concerning the mind and its operations,-without ufing new words and phrafes, or giving a different meaning to thofi that are received.” With equal propriety may this folid remark be applied to the great fubje£t, on the principles of which the de~ cifion of this Coqrt is to be founded. The perverted ufe of
 
 genus andJpecies
 
 in
 
 logic,
 
 and of
 
 imprejjions
 
 and
 
 ideas
 
 in
 
 metaphy-jics,
 
 have never done mifehief fo extenfive or
 
 iopraclically
 
 pernicious, . as has been done, by
 
 States
 
 and
 
 fovereigns,
 
 in
 
 politics
 
 and
 
 jarifpruácnce ¡
 
 .in the politics and jurifprudetice. even of thofe, who wiilred and meant to be free. 1⅛ the-place, of thofe ex^ prefitonsl intend not to lubftitute pew ones ⅜ b,ut the exp ref, fibns themfelves I fliall certainly ufe for purpofes- different from thofe, for which hitherto they have been frequently ufed ¾ and one pf them I ihall apply to ah abjedt ftili more different from that, 'to which it has hitherto been., mo-re frequently, ,1 may fay almoft univerfally, applied. In thsfepur-pofes, and in this application, I.fballhe juftified by example the.',molt fplendid, and by authority the -moft binding ; the example of the’molt refined as well as the moft. free .nation .known, to antiquity
 
 -,
 
 and the authority of one. of, the beft Conftitutions known to modern times; With regard.to.one. of the terms—-State—this authority is declared ; With regard tathe other—fovereign—the authority is implied only : Bu-t it is ..equally, ftrong :. For. -in an. inftrument. well drawn, as ih a poem well cpmpofed,,
 
 inepr.e
 
 is fometimes • moft expreffive
 

 . To the Conftitution of .the
 
 UnitedJstates:
 
 the'term sovereign* is totally unknown. . There is but one place where it could have been uled with propriety. ' But, evén in- that place it would not, -perhaps, have comported with the delicacy of -thpfe, who
 
 ordained
 
 and
 
 ejiablijfjed
 
 that Conftitution. -They
 
 might
 
 have announced themfelves' “ sovereign” , people.-of the
 
 United Staes:
 
 But fereuely confcioiis-of the
 
 fact,
 
 they1 avoided the
 
 ojlentatious
 
 declaration.,
 

 Having thus avowed my difapprobatioii of the purpofes, for which' the terms,
 
 State and fovereign,
 
 axe frequently uied,. and of the objebt, to which the. applicat- a of the laft pf them is almoft. uni'veifally lftade.j it is now proper that I ihpuld difclofe "the'meafling, which I, affign' tá both, ,and jbe application,
 
 *455
 
 •which'I make of the. latter. In doing this, I ihall have oo-caiion' incidently to evince, how true it is, that States and Governments'were made for man ; and, at the fame time,' how true it is, that his
 
 creatures zvAfefvants
 
 have firft deceived, next ■vilified, and, at ⅛⅜
 
 opprejfed
 
 their
 
 majler
 
 and
 
 maker.
 


 Man,-fearfully and wonderfully made, is the workmanlhip of his all perfect CreAtoR : A State; ufeful and valuable as the. contrivance is, is the
 
 inferior
 
 contrivance of
 
 man;
 
 and from his
 
 native
 
 dignity derives all its
 
 acquired
 
 importance.. When I fpeak of a State as an inferior contrivance, I mean that it is a contrivance inferior only to. that, which is
 
 divine
 
 - Of all
 
 human
 
 contrivances, it is certainly molt tranlcendantly excellent. It is concerning this conti ivance that
 
 Cicero
 
 fays fó fublimely, “ Nothing, which is exhibited upon our globe, is more acceptable to that divinity, which governs the whole uni., verfe, than thofe communities and .affemblages of men, which, lawfully alfociated, are denominated States
 
 *
 
 ”.
 

 Let a
 
 State
 
 be confidered as fubordinate to the .people : But let every thing elfe be fubordinate to the
 
 State.
 
 The
 
 latter
 
 part of this pofition is equally neceflary with the former, • For in the practice, and even at length, in the fcience of politics there has very frequently been a ftrong current againft, the natural order of things, and an inconfiderate or an intereiled difpofition to lacrifice the
 
 end
 
 to the
 
 means.
 
 As the ■
 
 State
 
 has claimed precedence .of the people ; fo, in the fame' inverted courfe of things. thp’
 
 Government
 
 has often claimed precedence of the State; and to this perverlion in the
 
 fecond
 
 degree, many of the volumes of confufion concerning fovereignty. owe their exiftence. The.
 
 minflers,
 
 dignified very properly by the appellation of the
 
 magfirates,
 
 have wifhed, and have fucceeded in their wilh, to be confidered as the
 
 fovereigns
 
 of- the State. This
 
 fecond
 
 degree of perverlion is confined to the old world, and begins to diminilh feven there ; but the
 
 firfl
 
 degree; 3s ftill too prevalent, even in the feveral States, of which our union is eompofed. By a State I mean, a complete body of free perfons united together foi their common benefit, to enjoy peaceably what is their own, and to do juilice to. others. It is an
 
 artificial
 
 perfoh. It has its affairs and its interefls : It has its rules : T): has "its rights: And it has its obligations. It may acquire property diftinct from that.of its members*. It may incur debts to be difeharged out of the public flock,. not out of the private fortunes-of individuals. It maybe botíhd by contrails ; and for'damages arifing from the breach of thofe contrails. .In all our contemplations, however, concerning this
 
 *456
 
 feigned and artificial perfon, we ihould never forget, jh'at, in truth and nature, thofe, who think and fpeak, and ⅞¾ are
 
 men.
 


 Is the foregoing defcription of'a State a true defcription
 
 i
 
 It will not be queftioned but it is.. Is there any part of .this def-cription, which’intimatcs, in the remoteit manner, that a State, any mo.ré than the men who compofe it, ought not to do juftic© and fulfil engagements ? It will not be pretended that there is. If juftice is not done ; if engagements are not fulfilled,j is it upon general principles of right, lefs proper, in the cafe of a great number, than in the cafe of an individual, to fecure, by compulfion, that, which will not be voluntarily performed ? Lefs proper it furely carinotbe. The only reafon, I believe, why a free man is bound byhuman, laws, is,
 
 that he binds himfelf.
 
 Upon th© fame principles, upon which he becomes bound
 
 by the laws,
 
 he be- ’ comes amenable to the
 
 Courts of Juftice,
 
 which are formed and authorifed by thofe laws. If one free man, an original Sovereign, may do all this ; why may not an aggregate of free men, a collection of original fovereigns, do this like wife ? If the dignity of each
 
 Jingly
 
 is undiminiihed
 
 •,
 
 the dignity of all
 
 jointly
 
 muft be unimpaired. A State, like a merchant, makes a contract : A diftioneft State, ⅝ like a diihoneft merchant, wilfully refufes to difcharge it : The latter is amenable to a Court of Juftice : Upon general principles Of right, lhall the former when fummon-eA to anfwcr.the fair demands of its creditor, be permitted, proteus-like, to aflume a new appearance, and to infult him and juftice, by declaring
 
 I am a
 
 sovereign
 
 State ?
 
 Surely not. Before a claim, fo contrary^ in its firft appearance, to the general principles of right and equality, be fuftained by a juft and impartial tribunal, the perfon, natural or artificial, entitled to make fuch claim,, fhould certainly be well known and authenticated. Who,or what, isa Sovereignty ? What is his or its fo-vereignty ? On this fubjedt, the errors and the mazes are end-■lefs arid inexplicable.' To enumerate all, therefore, will not be expedled: To take, notice of fome will be neceflary to the frill illufiration of the prefent important caufe- In one fenfe, the
 
 termfovereign
 
 has for - its correlative,
 
 fubjeB,
 
 In this fenfe, the term can receive no application j for it has 'no object in the Conftitution of the
 
 United States.
 
 Under' that. Conftiturion 'there are
 
 citizens,
 
 but
 
 no fubjeBs. <(
 
 Citizen of the
 
 United States
 


 *
 


 ”. “
 
 Citizens of another State.”
 
 “
 
 Citizens of different States.” .
 
 “ Á
 
 State or citizen thereof-}-”. The term, fubjerit, occurs, indeed, orice in the inftrument; but to mark-the contrail ftrongly, the epithet. “ foreign”!. is prefixed. In
 
 this
 
 fenfe, I prefume the State of
 
 Georgia
 
 has no claim upon
 
 *457
 
 feer-own citizens: In this fenfe, I am certain, Hie can have no claim upon the citizens of another State.
 

 In another fenfe,'according to-fome writers*-, every State,. which governs itfelf without any dependence on another powder, is a foveteign State.. Whether, with regard 'to her own citizens, this is the cafe of the State of
 
 Georgia ¡
 
 whether thofe citizens have doné, as the individuals of
 
 England
 
 are laid, by. their late inftruétors, to have done, furrendered the Supreme Power to the State or Government, and referved nothing to themfelves ; or whether, like the people of other States, and of the
 
 United States,
 
 the citizens of
 
 Georgia
 
 have referved the Supreme Power in their own - hands j and on that Supremé Power have made the State dependent, initead of .being foVe-reign ; thefe are queftions, to which, as a Judge in this caufe, I can neither know nor fuggeft the proper ajifwers ; though, aS ■a citizen of the
 
 Union,
 
 I know, and-am interefted to know, that the molt fatisfa&ory anfwers ' can be given. As a citizen," I know the Government of that State to be republican $ and my ihort definition of fuch a Government is,—one conftru&ed on this principle, that the Supreme Power refides in the-body of the people. As, a Judge of this Court, I know, and caa decide upon the knowledge, that
 
 tht
 
 citizens of
 
 Georgia,
 
 when , they adted upon the large fcale of the
 
 Union,
 
 as a part of -the « People of
 
 ihe.United States ”
 
 did
 
 not
 
 furrender the Supreme or fovereigh PoWr to that State
 
 •,
 
 but,
 
 .as to the purpofes of the
 
 Union, retained it to themfelves.
 
 As to the purpofes of the
 
 Union* therefore,
 
 Georgia is
 
 not
 
 a fmereign State.
 
 If the Judicial-decifion of this cafe forms
 
 one
 
 of
 
 thofe
 
 purpofes 5 Ac allegation, that
 
 Georgia
 
 is a fovereign State, is unfupported by the
 
 fa£h
 
 Whether the judicial decifion of this caufe is, or is n.ctt, one .of thofe purpofes, is a queftion which will be examined particularly in a fubfequent part of my argument* -
 

 There is a third fenfe, in which the term fovereign is fre-1 quently.ufed, and which it is very material to trace and explain, as itfurnilhes a bails for what I prefume to be one of the -pricipal objedtions againftthe' jurifdiétion of this Court over thd State of Georgia. In this fenfe, fovéreignty is derived from -
 
 *
 
 feudal íburce ; arid like many other parts of that fyftem fo degrading to man, ftill retains its influence over our fentiments and conduct, though the caufe, by. which that influence Was produced, never extended to the
 
 American
 
 States* The accurate and well informed Prefident Henault⅜ in his excellent chronological abridgment of the Hiftory of
 
 France,
 
 tells us, that, about the end of the fecond race of
 
 Kings,
 
 a new kind of pof-ieffion was acquired, under the name of'
 
 Fief.
 
 The Governor^ t»f' Cities and Provinces ufurped equally the propeity of land,
 
 *458
 
 and the
 
 adminjlration of jujiice ¡
 
 and eftablifhed them felves as proprietary
 
 Seigniors over
 
 thofe places, in which, they had been only civil magiftrates or military officers. By this means, there was introduced into the State a new kind of authority, to which was ailigned the appellation of fovereignty
 
 *
 
 . In procefs of time the feudal fyftem was extended over •
 
 France,
 
 and al-moft all the other nations of
 
 Europe:
 
 And every
 
 Kingdom
 
 became, in fá£t, a large
 
 fief
 
 Into
 
 England
 
 this fyftem was introduced by the conqueror : and to this aera we may, probably, refer the;-
 
 Englijh
 
 maxim, that the
 
 King
 
 or fovereign is the fountain of Juftice. But, in the cafe of the
 
 King,
 
 the fove-vereignty had a double operation. While it veiled him with jurifdiftion over others, it excluded all others from jurifdifHon over him. With regard to him, there was no fuperior power; and, confequently, on feudal principles, no right of jurifdiftion. “
 
 †
 
 The law, fays Sir
 
 William Bladflone, •
 
 afcribes to the
 
 King
 
 the attribute of fovereignty: he is fovereign and independent' within his own dominions; and owes no kind of objection to any other potentate upon earth. Hence it is, that no
 
 fuit
 
 or action, can bé brought again ft the
 
 King,
 
 even in civil matters; becaufe' no Cburt can have jurifdiction over him; for alljurif-dhftion implies fuperiority of power.” This laft pofition is only a branch of a much more extenfive principle, on which a plan of fyHematic defpotifm has been lately formed in
 
 England,
 
 and prcfecuted with unwearied ailiduity and care. Of this plan the .author of the Commentaries was, if not-the introducer, at leaft the great fupporter. ■ He has been followed in it by writers later and lefs known ; and his dodtirines have, both on the other and
 
 this
 
 fide of the Atlantic, been implicitly and generally received bythofe, who neither examined their
 
 principles
 
 nor their
 
 coifie-quences,
 
 The principle is, that all.humati law muft be prefc'rib-ed by a
 
 fuperior.
 
 This principle I mean riot now to examine. Suffice it, at prefent to fay, that another.principle, very different in. its nature and operations, forms,' in my judgment, the baits of found and genuine jurifprudence ; laws derived from the pure fource of equality and juftice muft be founded on the ■consent of thofe, whofe obedience they require. The
 
 fovereign,
 
 when trace& to his fource, muft be found in the
 
 man.
 


 I have now fixed, in the fcale of things, the grade of a
 
 State;
 
 and have defcribecl its cpmpofure : I have confidered the nature of fovereignty ; and pointed its application to the proper objeft. I have examined the queftion ■ before us, by the principles of general jurifprudence^ In thofe principles I find nothing, which terids
 
 to
 
 evince án exemption of the State of
 
 Georgia,
 
 from the jurifSi£tion of the Court. I find every thing to have a contrary .tendency,
 

 
 *459
 
 II. Iam, in the fecónd place, to examine this .queftion by the laws and praftiee of different States and
 
 Kingdoms.
 
 In ancient Greece, as we learn from
 
 Ifocrates,
 
 whole nations defended their rights before crouded tribunals. Such occafions as thefe excited, we are told, all the powers of perfuafion j and the vehemence and enthufiafm of the fentiment was gradually infufed into the
 
 Grecian
 
 language, equally fufeeptibie of ftrength and harmony. In thofe’ days, law, liberty, and refining, fcience, made their benign progrefs in ftrift and graceful union : The rude and degrading league between the bar and feudal barbarifm. was not yet formed.
 

 When the laws and praftiee of particular States have any application to the queftion before us ; that application willfuruiih what is called an argument
 
 a fortiori ;
 
 becaufe all the inftances produced will be inftances of
 
 fubjeBs
 
 inftituting and fupporti'ng fuits againft thofe, who were- deemed
 
 their own /oversigns.
 
 Thefe inftances áre ftronger than the prefent one
 
 -,
 
 becaufe between the prefent plaintiff and defendant no fuch unequal relation is alledged to exift.
 


 Columbus
 
 atchieved the difeovery of that country, which, perhaps, ought to bear his name. Acontraft made by
 
 Columbus
 
 furniihed the firft precedent for fupporting, in his difeóvered country, the caufe of injured merit againft the claims and pre-tentions of haughty and ungrateful power. His fon
 
 Don Diego,
 
 wafted two years in ineeffant, but fruitlefs, folicitation at the Court of
 
 Spain,
 
 for the rights which defeended to him in confe-quence of his father’s original capitulation. H.e endeavoured, at length, to obtain, by a legal fentence, what he could not procure from the favour of an' interefted
 
 Monarch.
 
 He commenced a fuit againft
 
 Ferdinand
 
 before the Council, which managed
 
 Indian
 
 affairs „• and that
 
 Court,
 
 with integrity which reflects honour on their proceedings,
 
 decided
 
 againft the
 
 King,
 
 and
 
 fe/lained Don Diego’s
 
 claim.*
 

 Other States have inftituted officers to judge the proceedings-of their
 
 Kings :
 
 Of this kind were the
 
 Ephori
 
 of Spartaof this kind alfo was the mayor of the Palace, and afterwards the confiable of
 
 France.
 


 †
 



 But of all the laws and inftitutions relating to the prefent queftion, none is fo ftriking as that deferibed by the famous
 
 Hot-toman,
 
 in his book entitled
 
 Francogallia.
 
 When the
 
 Spaniards
 
 of
 
 Arragon
 
 eleft a
 
 King,
 
 they reprefent a kind of play, and introduce a perfonage, whom they dignify by the name of law,
 
 la fufliza,
 
 of
 
 Arragon.
 
 This perfonage they declare, by a public decree, to be greater and more powerful than their
 
 Kings
 
 and then addrefs him in the following remarkable ■ expreffions.
 

 ** We, who arc of as great worth as you, and can do. more
 
 *460
 
 than you can do, ele£t you to be our
 
 King,
 
 upon the conditions . Stipulated : .But between you and us there is
 
 one
 
 of "greater authority than yoü.”
 
 *
 


 In
 
 England,
 
 according to Sir
 
 William Blackjlone-,
 
 no fuit cart be brought againit the
 
 King,
 
 even in civil matters. So, -in that
 
 Kingdom,
 
 is the law, at
 
 this
 
 time, received But it was not always fo. Under the
 
 Saxon
 
 Government, a very different doctrine was. held to be orthodox. Under that Government, as we are informed by the Mirror of Juftice, a boofc faid, by Sir
 
 Edward Coke, to
 
 have been written, in part, at leaft, before the conqueft ; under that Government it was ordained, that the
 
 King's
 
 Court ihouid be open to all Plaintiffsj by which, without delay, they ihouid have remedial writs, as well againit the
 
 King
 
 or againit the
 
 phtsen,
 
 as againit any
 
 other
 
 of the people.
 
 †
 
 The law-continued to be the fame for fome centuries after the conqueft.
 

 Until the time of
 
 Edward I.
 
 the
 
 King
 
 might have been fued as a common person. The form of the process was even imperative. "Pr
 
 æcipe Henrico Regi Angliæ
 
 &c. "Command
 
 Henry King
 
 of
 
 England”
 
 &c.
 
 ‡
 

 Bracton,
 
 who wrote in the time of
 
 Henry III.
 
 uses these very remarkable expreffions concerning the
 
 King
 
 “in
 
 justitia recipienda, minimo de regno fuo com
 
 paretur”—“in receiving justice, he should be placed on a level with the meanest person in the
 
 Kingdom
 


 §
 


 .”
 
 True it is, that now in
 
 England
 
 the
 
 King
 
 must be sued in his Courts by
 
 Petition,
 
 but even now, the difference is only in
 
 the form,
 
 not in, the
 
 thing.
 
 The judgments or decrees of those Courts will sub-stantially be the same upon a
 
 precatory
 
 as upon a
 
 mandatory
 
 process. In the Courts of Justice, says, the very able author of the confiderations on the laws of forfeiture, the
 
 King
 
 enjoys many privileges; yet not to defer the subject from contending with him freely
 
 ||
 
 . The judge of the High Court of Admiralty in
 
 England
 
 made, in a very late cause, the following manly and independent declaration.
 
 “
 
 In any cafe, where the Crown is a party, it is to be obferved, that the Crown can no more withhold evidence of documents in its poffeffion, than a private perfon. If the Court thinks proper to
 
 order
 
 the production of any public inftrument; that order
 
 mujl
 
 be
 
 obeyed.
 
 Itwants.no
 
 Snjigma
 
 of an - authority derived from the Crown
 
 ¶
 
 .”
 

 " Judges ought to know, that the pdoreft peafant is a man as well as the
 
 King
 
 hirrtielf : all men ought to . obtain juftice ; lince in the eilimation of juftice, all men are
 
 equal ;
 
 .whether the Prince complain of a-peafant, or a peafant complain of the Prince-”* Thefe are the words of a
 
 King,
 
 of the late
 
 Frederic
 
 of
 
 Bmjfia.
 
 I11 his Courts of Juftice, that great man flood
 
 *461
 
 his native greatnefs ; and difdained to mount upon the artificial ftilts of fovereignty.
 

 Thus much concerning the laws and prafitice of other States and Kingdoms.. We fee nothing againft, but much in favour of, the jurifdiñion of this Court over the State of
 
 Georgia,
 
 a party to this caufe.
 

 ■III. I am, thirdly, and chiefly, to examine the important queftion now before us, by the Conftitution of the
 
 United States,
 
 and the legitimate refult of that valuable mftrumer.t. Under this view, the queftion is naturally fubdivided into two others. 1.
 
 Could
 
 the Conftitution of the
 
 United-States
 
 veil a jurifdiftion over the State of
 
 Georgia ?
 
 a.
 
 Has
 
 that Conftitution veiled fuch jurifdhftion in this Court ? I have already remarked, that in
 
 the practice,
 
 and even in the
 
 fcience
 
 of politics, there has been frequently a ftrong current againft the
 
 natural
 
 Order of things ; and an
 
 inconfidcrate
 
 or an
 
 interefied
 
 difpofition -to faerifice the
 
 end
 
 to the
 
 means.
 
 This remark dererves a more particular illuftration. Even in aimoft every nation, v/hich has been denominated
 
 free,
 
 the
 
 fate
 
 has affirmed a fupercilious preeminence above the
 
 people,
 
 who have
 
 formed
 
 it : Hence the haughty notions
 
 offate independence,fate-fovereignty
 
 and
 
 fate fu-premacy.
 
 In
 
 defpotic
 
 Governments, the
 
 Government
 
 has ufurp-ed, in a fimilar'manner, both upon the
 
 fate
 
 and the
 
 people :
 
 Hence all arbitrary doctrines and pretenfions concerning the Supreme, abfolute, and incontrolable, power
 
 oí Government.
 
 In
 
 each, man
 
 is degraded from the
 
 prime
 
 rank, which he ought to hold in human affairs : In the
 
 latter, thefate
 
 as well as the
 
 man
 
 is degraded. Of
 
 both
 
 degradations, (hiking inftances occur in htftory, in politics, and in common life. One of them is drawn from an anecdote, which is recorded concerning
 
 Louis XIV.
 
 who has been (tiled the grand
 
 Monarch
 
 of
 
 France.
 
 This
 
 Prince,
 
 who diffufed around him fo much dazzling fplendour, and fo little vivifying heat, was vitiated by that inverted man-, ner of teaching and of thinking, which forms
 
 Kings
 
 to he tyrants, without knowing or even fyfpedting that they are fo. - • The op-prelfion, under which he held his fubjedls during the whole courfe of his long reign,^proceeded chiefly from the principles and habits' of his erroneous education. Ky thefe, he had been áccuftomed to confider his
 
 Kingdom
 
 as his patrimony, and his power over his fubjje&s as his. rightful and undelegatcd inheritance. Thefe fentiments were fo deeply and ftrongly imprinted pn.his mind, that when one of his Miniflers reprefented to .him-the miférable condition, to which thofe fubje&s were reduced, and, in the cóurfe of his representation, frequently uf-ed the word
 
 UEtat, the fate,
 
 the
 
 King,
 
 though he felt the truth. »nd approved the fubftance of all that was faid, yet was fliock-$d at; the frequent -repetition of the exprdfian
 
 L’ptat,-
 
 and
 
 *462
 
 complained of it it a's an indecency offered to his petfon and character. And, indeed, that
 
 Kings
 
 ihould imagine themfelves the
 
 final canfies,
 
 for which
 
 men
 
 were made, and
 
 fiocieties
 
 were-formed, and
 
 Governments
 
 were inftituted, will ceafe to he a matter of wonder or furprife* when we find that lawyers, and ftatef-xue», and philofophers, have taught or favoured .principles,'which neceffarily lead to the fame conclufion. Another inftance, equally ftrong, but ftill more aftonifhing, is drawn from the
 
 Hriiifih
 
 Government, as deferibed by Sir
 
 William Blacljlone
 
 and iris followers. As deferibed by him and them, the
 
 Britijh
 
 is a ¿efpotie Government, it is a Government .without a-people. In, that Government, as fo deferibed, the
 
 fiovereignty
 
 is poflefled by the Parliament : In the Parliament, therefore, the fupreme an.d abfolute authority is vefted
 
 :*
 
 In the Parliament refid'es that incontrolable and defpotic' povi¡er, which, in ail Governments, muft refidc fomewhere. The conftituent parts of the Parliament'are the
 
 King's
 
 Majefty, the' Lord’s Spiritual, the lord’s Temporal, and the Commons. The
 
 King
 
 and thefe three Eft a tes together form the great corporation or body politic of the
 
 Kingdom.
 
 All thefe fentiments are found j the laft expref-íions are found •verbatim† in the commentaries upon the laws of
 
 England.
 


 †
 



 The
 
 Parliament
 
 fonn the great
 
 body politic
 
 of
 
 England ! What,
 
 then, or
 
 inhere,
 
 are the people ?'
 
 Nothing
 
 1
 


 No •where
 
 ! They are not. fo much as even the <c bafelefs fabric of a vifion !” From legal contemplation they totally difappear ? Am I not warranted in faying, that, if this is a juft defeription j a Government, fo and juftly fo deferibed, is a defpotic Government ? Whether this defeription is or is not a juft one, is 3 queftion of very different import.
 

 . In the
 
 United States,
 
 and in the feveral -States, which coto-pofe the
 
 Union,
 
 we go not fo far : but ftill we go
 
 one Jlep
 
 farther than we ought to. go in this unnatural and inverted order of things. The
 
 Jlat'es,
 
 rather than the people, for whofe fakes the States exift, are frequently the objefts which attract and arreft our principal attention. This, I believe, has produced much of the confufion and' perplexity, which' have appeared . in fcveral proceedings and feveral publications on ftate-politics, and on the politics, too,. of the
 
 United States.
 
 Sentiments and expref-lio-ns.o-f this inaccurate kind prevail in our common, even in our convivial,'language. Is a tóaft afkeu ? « The
 
 United States,”
 
 inftead of the *« People of the
 
 United States,”
 
 is the toaft gir ven. This is not
 
 politically
 
 correft. The toaft Is meant to pre-fent to view
 
 thefihjl
 
 great object in the
 
 Union i
 
 It prefents only
 
 < \ye"Jecdnd s
 
 It pfefents only.the
 
 artificial
 
 perfon, inftead of the.
 
 natural
 
 perfons, who Tpoke it into exilíente. A
 
 State
 
 I cheer⅛
 
 *463
 
 fully admit, is the nobleft work of
 
 Man s
 
 But,
 
 Man
 
 free and honeft, is, I fpeak as to this world, the nobleft of God.
 

 Concerning the prerogative of.
 
 Kings,
 
 and concerning the fovereignty of States, much has been faid and written ; but little has been faid and written concerning a fubjecl . much more dignified and important, the majefty of the people. The mode', of expreflion, which I would fubftitut'e in the place of that generally ufed, is
 
 noionlj politically,
 
 but alfo (for between true liberty and true tafte there is a clofealliance)
 
 dajficnlly
 
 more corrcdl. On the mention of Athens, a thoufand refined and endearing ■affociations rulh at once into the memory of the fchoJar, the fhilofopher, and the
 
 patriot.
 
 When Homer, one of the moft cot-redl, as well as the oldeift of human authorities, enumerates the
 
 -other
 
 nations of
 
 Greece,
 
 whofe forces- acted at the liege of
 
 Troy,
 
 he arranges them under the names of their different
 
 Kings at Princes ;
 
 But when he comes to the
 
 Athenians,
 
 he diftinguiflua them by the peculiar appellation of the people
 
 *
 
 of
 
 Athens:
 
 The well known addrels ufed by
 
 Demojlhenes,
 
 when he bar-rangued and animated his affembled countrymen, was “ O Men of
 
 AthensT
 
 With the ftridleft propriety, therefore,
 
 clafftccd
 
 and
 
 ■political,
 
 our national feene opens with the moft magnificent ob-.. jedt, which the nation could prefent. <« The people of the-
 
 United
 
 States” are the firft perionages introduced. Who 'were thofe people
 
 i
 
 They were the citizens of thirteen States, each of which had a feparate Conftitution and Government, and all of which were canne&ed together by articles of confederation. To the purpofes of public ftrength and felicity, that confederacy was totally inadequate. A requifition on the feveral States terminated-its
 
 LegiJlative
 
 authority :
 
 Executive
 
 or
 
 Judicial
 
 authority it had none. In order, therefore, to form a moré perfedt union,
 
 to efiabltfh jujtice,
 
 to enfure domeftic tranquillity, to providé for common defence, and to fecure the bleffings of liberty,
 
 thofe people',
 
 among whom were the people of
 
 Georgia,
 
 ordained and eftablilhed the prefent Conftitution. By that Con-ftitution Legislative power is veiled, Executive power is veiled,
 
 Judicial
 
 power is veiled.
 

 The.queftionnow opens fairly to our view,
 
 could
 
 the
 
 people
 
 of thofe States, among whom were thofe of
 
 Georgia,
 
 bind thofe
 
 States,
 
 and
 
 Georgia
 
 among the others, by the Legiflative, Executive, and Judicial power fo veiled
 
 l
 
 If the principles, on Chichi have foundedmyfelf, are juft and true 5 this queilion-muft unavoidably receive an affirmative anfwer. If thofe
 
 States
 
 were the
 
 work oí
 
 thofe
 
 people s
 
 thofe people, and,, that I may apply.the café clofely, the’people of
 
 Georgia,
 
 in particular,
 
 *464
 
 could alter, as they pleafed, their former work: To any given! degree, they could
 
 diminifh
 
 as well as enlarge it.
 
 Any or all
 
 of' the former State-powers, they could
 
 extinguijh
 
 or transfer. The inference, which rieceflarily refults, is, that the Conftitu* tion ordained and eftabliihed by
 
 thofe
 
 people 5 and, {till clofely to apply the cafe, in particular by the people of
 
 Georgia, could
 
 veil jurifdidlion or judicial power over thofe States-and over the State of
 
 Georgia
 
 in particular.
 

 The next queftion under this head,
 
 is,—Has
 
 the Conílitution done fo ? Did thofe people mean to exercife this, their uní doubted power ? Thefe queftions may be refolved, either by fair and conclufive deductions, or by diredt and explicit decía* rations. In order^ ultimately, to difcover, whether the people of the
 
 United States
 
 intended to bind thofe States b.y the
 
 Judicial
 
 power veiled by the national Conílitution, a previous en-quiry will naturally be : Did
 
 thofz people
 
 intend.to bind thofe
 
 fates
 
 by the
 
 Legiflative
 
 power veiled by that Conílitution ? The articles of confederation, it is well known, did not operate upon individual
 
 citizens ¡
 
 but operated only upon
 
 fates,
 
 This defeat was remedied by the national Conílitution, which,
 
 as all ssHovj,
 
 has an operation on individual citizens. But if an opinion, which fome feem to entertain, be juft; the defect remedied, on- one fide, was balanced by a defedt introduced on the other; For they feem to think, that the prefent Conílitution operates only on individual citizens, and not on States. This opinion, however, appears to be altogether unfounded. When certain laws of the States are declared to be {f fubjedl to there-vision and controul of the
 
 Congress;”
 

 *
 
 it cannot, furely, be contended that the
 
 Legiflative
 
 power of the national Government was meant to have
 
 no
 
 operation on the feveral States. The
 
 fatt,
 
 uncontrovertibly eftabliihed in
 
 one
 
 inflance, proves the
 
 principle
 
 in
 
 all other
 
 inftances, to which the fadts will be found to apply. We may then infer, that the people of the
 
 United States
 
 intended to bind the feveral Sta:es, by the
 
 Legiflative
 
 power of the national Government.
 

 In order to make the difcovery, at"which we ultimately aim, a
 
 second
 
 previous enquiry will naturally be—Did the people of the
 
 United States
 
 intend to bind the feveral States by the
 
 Executive
 
 power of the national Government? The affirmative answer' to the former queftion diredts, unavoidably, an affirmative anfwer to this. Ever lince the time of
 
 Bratton,
 
 his maxim, I believe, has been deemed a good one-—4*
 
 Supervacuum ejfet leges tondere, nift ejfet qui leges tueretur.”
 


 †
 



 “ It would be fuperfluous' to
 
 make
 
 laws, unlefs thofe laws, when made, were to be enforced.”- When the laws are plain, and the application of them is uncontrovertéd, they are enforced immediately by the
 
 *465
 

 Executive
 
 authority of Government. When the application of them is doubtful or intricate, the interpoiition of the
 
 judicial
 
 authority becomes neceflary. The fame principle, therefore, Which directed us from the
 
 firfl
 
 to the
 
 fecond
 
 ftep, will direct us from the
 
 fecond
 
 to the third and
 
 lafl
 
 flep of our deduction. Fair and conclufive deduction, then, evinces that the
 
 people
 
 of the
 
 United States did
 
 veft this Court with jurifdifticn over the State of
 
 Georgia.
 
 The fame truth may be deduced from the
 
 declared objects %
 
 and the general texture of the Conftitution of the
 
 United States.
 
 One of its declared objefts is, to fotm an union more perfeift, than, before that time, had been formed-. Before that time, the
 
 Union
 
 poiTeiled Legiflative, but
 
 unittforced
 
 Legiflative power- over the States. Nothing could be more natural than to
 
 intend,
 
 that this Legiflative power ihould be enforced by powers Executive and-
 
 judicial-.
 
 Another declared object is, “ to eftablifh juftice.’’ This points, in a particular manner, to the
 
 Judicial
 
 authority. And wheii we view this object in conjunction with the declaration, <c that no State íháíl pafs a; law impairing. the obligation of contraéis we ihall probably think, that Ais objeft points,' in a particular man-' ner,. to the jurifdiifion of the Court over the feveral States. What good purpofé could this Conftitutional provilion fecure, if a State might pafs a law impairing the obligation of
 
 its ontsn
 
 contrails ; and' be amenable, for fuch a violation' of right, to no ¿otttrouling judiciary power ? We have feen, that-on the principles of general jurífprüdence, a State, for the breach of a contrail, may be liable- for damages. A .third declared objeit .is—“ to enfure domeftic tranquillity.’* 'This tranquillity is molt likely to be difturbed by controverfies between States. Thefe corifequences will be molt peaceably and- effeitually decided by-the eftabli&ment and by tlie exercife'of a fiiperiiitending judicial authority. ' By fuch exércife and eftabliftment, the law of nations ; the rule between' contending States ; will be‘enforced-among the feveral States, in the fame manner as municipal-law.
 

 - ’ Whoever confiders, in a combined and compr ehétifive view, the
 
 general texture
 
 of the-Conftitution, will be fatisfied, that the people of the
 
 United States
 
 intended to form'themfeíves into a nation for
 
 national purpofes.-
 
 They inftitutéd, for
 
 fuch
 
 pur-po’fes, a national Government, complete in-jall ks parts, with powers Legiflative, Executive and Judiciary; and, in all thofe powers, extending oyer the whole nation. Is it congruous,' that, with regard'do
 
 fuch
 
 purpofes, any man dr body of men, any perfon natural or artificial,' ihould be permitted to claim fuc-cefsfully an entire exemption from the jtírifditlion of the national Government ? Would not fuch claims, crowned with' fuccefs, be repugnant to our very exigence as a nation ? When
 
 *466
 
 fo many trains of decluffion, coming from different quartet's, converge and unite, at laid, in the fame point; we may fafely conclude,. as the
 
 legitimate refult oí
 
 this Conftitution, that the State of
 
 Georgia
 
 is amenable to the jurifdiction of this Court.
 

 But, in my opinion, this do&rine refts not upon the legitimate refult of fair and conclufive deduction from the Conftitution •: It is confirmed, beyond all doubt, by the
 
 direct
 
 and
 
 explicit declaration
 
 of the Conftitution itfelf. {i The judicial power of the
 
 United States
 
 fliall extend, to controverfies between
 
 two
 
 States.”
 
 *
 

 Two
 
 States are fuppofed ’ to have a controverfy between them : This controverfy is fuppofed tobe brought before thofe veiled with the judicial power of the
 
 United States
 
 : Can the moft confummate degree of jjrofeffional ingenuity, de-vife a mode by which this
 
 “
 
 controverfy between two States” can be brought before a Court of law; and yet neither of thofe States be a Defendant -? “ The judicial power of the
 
 United States
 
 {hall extend to controverfies, between a
 
 fate
 
 and
 
 citizens
 
 of
 
 another
 
 State.” Could the ftridleft legal language ; could even that language, which is .peculiarly appropriated to an art, deemed, by a great, mailer, to be one of the moft honorable, laudable, and profitable things in our law ; could-'this ftiift and appropriated language, deferibe, with more, precife qcc.uracy, the caufe now depending before the tribunal ?. Caufes, and not
 
 parties
 
 to caufes, are weighed by juíticé, in her equal feales : On the former
 
 jolely,
 
 her attention is fixed1: To the latter,- ihe
 
 is,
 
 as Ihe is painted, blind.
 

 I have now tried this queftionby all the'toucliftones,'to which I propofed to apply it. I -have examined it by the principles of general jurlfprudence^ fty the laws and praftice of States and
 
 Kingdoms ;
 
 and by the Conftitution of the
 
 'United States.
 
 From -all, the combined inference is,- that the action lies.
 

 Cushihg,
 
 Jufice.
 


 The grand and principal queftion in this cafe is, whether a State can, by the Feeders! Conftitution,' be fued by-an individual citizen of another State
 
 i
 


 The point turns not upon the law or practice of
 
 England,
 
 although perhaps it may be in fome meafure elucidated thereby, nor upon the law of any other country whatever; but upon tlieiConftitution eftablifhed by the people of
 
 tht United States ¡
 
 and particularly apon the extent of powers given to the Fcede-ral Judicial in the 2dfection of the 3d article of the Conftitution. It is declared that “ the Judicial power fliall extend to all cafes in law and equity arifing under the Conftitution, the laws of the
 
 United'Hates;
 
 .entreaties made or which {hall be made under their authority ; to all cafes a£Fe£ting ambafladors or other public minifters and confuís ; to all cafes .of admiralty and maritime jurifdiftion to controverfies, tq which-the
 
 United
 
 
 *467
 

 States
 
 fhall be a party ; to controverfies between two or more States and citizens of another State ; between citizens of different States'; between citizens of the fame State claiming lands under grants of different States; and between a State and citizens thereof and foreign' States, citizens or fubjefts.1’' The. judicial power, then, is exprefsly extended to “
 
 controverfies between a State and citizens of another State.”
 
 When a citizen makes a demand againfl a State, of which he is not a citizen, it is as really a controverfy between a State and a citizen of another State, as if fuch State made a demand againfl fuch citizen. The cafe,' then, feems clearly to fall within the letter of the Conftitution. It may be fuggefted- that it could not be intended to fubjedt a State to- be a Defendant, becaufe it would effeft the fovereignty of States. If that be the -cafe, what- fhall we do with the immediate preceding elaufe ; “
 
 controverfies- betvieen two' or more States,”
 
 where a State muft of neceflity be Defendant
 
 i
 
 If it- was not the intent, in the very next elaufe aifo> that a State might be made Defendant,, why was-it. foexpreffed as naturally to lead to and- comprehend- that idea ? Why w as not an exception made if one'was intended ?.
 

 Again —what are w:e to do,with the laft elaufe of. the febtion of judicial powers, viz.
 
 Gontr.overfes between, a fate, or. the citizens thereof, and. foreign fates or citizens ?”
 
 Here again, States muft be fuable or liable to be made Defendants, by this elaufe, which has a fimilar mode of language with the two other claufes I have remarked upon. For if. the judicial power exr tends to a controverfy between one of. the
 
 United States
 
 and a foreign State, as the elaufe expreffes, one of them muft be Defendant. . And thenj what becomes of the fov.ereignty Of States as. far as filing affebts, it ? .- But although the words, appear reciprocally to affeñ the State here and a foreign State,, and put them on the fame footing as far as may be,, yet ingenuity may, fay, that the State here may. fue, but cannot be fued.j but that the foreign State may be fued but cannot fue. We may touch foreign fovereignties hut not our own.. But I conceive the reaT fon of the thing, as well, as the words of the Cpnftitution, tend to ihew that the Feed eral Judicial power, extends to a fuit brought by a foreign State againft any one of the
 
 United States.
 
 One defign of the general. Government was for managing the great affairs of peace and war and the general- defence^ which were impoffible to be condudled, with fafety, by the Statesyi-
 
 paratdy.
 
 • Incident to thefe powers, and. for preventing contro-v.erfies between, foreign powers, or citizens from rifing to extremities and toan appeal to the fword, a national tribunal was iieceffary, amicably to decide them, and thus ward' off fuch fatal, public calamjty. Thus, States.at home and-their;citizens, and foreign States and their citizens! are put together without-
 
 *468
 
 diftinftion upon the fame tooting, as far as may be, as-to contro-. verfies between them* So alfo, with refpefil to controverfies between a State and citizens of another State’(at home) comparing all t: e claufes together, the remedy is' reciprocal ; the claim to juftice equal. As controverfies between State and State, and between a State and citizens of another State, might tend dually to involve States in war and bloodihed, a difinterefted civil tribunal was intended to be inftituted to decide fuch con*, troverfies, and preferve peace and friendfhip.- Further ⅜ if a State is entitled to Juftjqe in the Fcederal Court, againft a citizen of another State, why not fuch citizen againft the State,' when the fame language equally comprehends both ? The rights of individuals and the j uiiice due to them, are-as dear and precious as thofe of States. Indeed'the latter are founded upon the former ; and the great end and objedt of them muít be to fecure and fupport the rights of individuals, or elfe vain is Government.
 

 But {till it' may be infilled, that this will reduce States'
 
 to-
 
 mere corporations, and take away all fovereignty. As to corporations, all States whatever are corporations ox bodies politic. The only quellion is, what are their powers ? As to individual States and the
 
 United States,
 
 the Conftitution marks the boundary of powers. Whatever power is dcpofited with the
 
 Union
 
 by the people for their own neceflary fee urity, is.fo far a curtailing of the power and prerogatives of States. This is, as it were, a felf-evident propofition ; at leaft it cannot be contefted. Thus the power of declaring wár, making peace, railing and fupporting armies for public, defence, levying duties, cxcifes and taxes, if neceflary, with many other powers, are lodged in,
 
 Congrefs
 
 j and are a moil eflential abridgement of Stare fovereignty,' Again
 
 ;
 
 the reitriftions upon States ; “ No State ihall enter into any
 
 treaty,
 
 alliance,
 
 or confederation, coin,
 
 money,
 
 emit hills of credit, make'any thing bid gold and fiver a, tender in payment of debts, pafs any Jaw impairing the obligation of contrasts f
 
 thefe, with a number of others, are important reftridlions of the power of States, and were thought necef-fary to. maintain the Union; and to eílabiifti fome fundamental uniform principles of public juftice, throughout the whole
 
 Union.
 
 So that, I think, no argument of force can be taken from the fovereignty of States. Where it has been abridged, it was thought neceflary for the greater indifpcn fable good of the whole. If the Conftitution i& found inconvenient in praftice in this or any other particular, it is well that aregular mode is, pointed out for amendment. ■ But; while it remains,'all offices Legiflative, Executive, and Judicial, both of the States and the
 
 Union,
 
 are bound by óath tq fupport it.
 

 
 *469
 
 One other objeftion has been fuggefted, that if a State may be fued by a citizen of another State, then the
 
 United States
 
 may be fued by a citizen of any of the. States, or, in otheT words, by any of their citizens. Jf this be-a neceffary confe-quence, it.muft be fo. I doubt the confequence,. from the different wording of the different claufes, connected with other reafons. When fpeaking of the
 
 United
 
 States, the Conftitution fays “
 
 controverftes to -which the
 
 United States
 
 fall he a party”
 
 not controverftes between the
 
 United States
 
 and any of their citizens. When fpeaking of States, it fays,
 
 conireverftes he* tween two or more fates ; between a fate and citizens of another date”
 
 As to reafons for citizens fuing a different State, which do not hold equally good for fuing the
 
 United States
 
 ; one may be, that as controverftes between a State and citizens of another State, might have a tendency to involve both States'in conteft, 'and perhaps in war, a common Umpire to decide fuch controver-fíes, may have a tendency to prevent the mifehief. That an object of this kind was had in view by the framers of the Confti-tution, I have no.doubt, when I confider the claihing interfering laws which were made in the neighbouring States, before the adoption of the Conftitution, and fome affecting the property of citizens of another State in a very different manner from that of their ow.n citizens. But I do not think it neceffa-ry to enter fully into the queftion, whether the
 
 United States
 
 are liable to be fued by an individual citizen ? In order to decide the point before us. Upon the whole,. I am of opinion, that the Conftitution warrants a fuit again a State, by an individual citizen of another State,
 

 A fecond queftion made in the cafe was, whether the particular action of
 
 ajfumpftt
 
 could lie againft a State ? I think
 
 af-fumpfit
 
 will lie, if any fuit; provided a State is capable of contra&ng.
 

 The third queftion refpefls the competency of fervice, which I apprehend is good and proper ; the fervice being by fummons and notifying the fuit to the Governor ana the Attorney General -, the Governor, who is the Supreme Executive Magiftrate ■and.reprefentative of the State,- who is bound by oath to defend the State, and by the Conftitution to give information to the Le-gillature of all important matters which concern' the inteieft of the State j the Attorney General who is bound to defend the • iptereft of the State in Courts of Law.
 

 Jay,
 
 Chief Juf'iee.
 
 ' The queftion we are now to decide has been accurately ftated, viz. Is a State fúable by individual citizens of- another State P
 

 It is Laid, that
 
 Georgia
 
 refufes to appear and anfwer to the Plaintiff in- this adtio'n, becaufe {he is a
 
 fovereign
 
 State, and therefore not
 
 liable
 
 to fuch actions. In order to afeertain the me-
 
 *470
 
 fits of .this objection, let us enquire, lit. In what fenfe
 
 Georgia is
 
 fovereign State. 2d. Whether fuability is incomputable with fuch fevereignty. 3d, Whether the Conftit-ution (to which
 
 Georgia
 
 is a party) authorifes fuch an attio'n againft her.
 


 Suability znd ftiable
 
 are words not in common ufe, but they conciiely and correCtly convey the idea annexed to them.
 

 1st. In determining the fenfe in which
 
 Georgia
 
 is a fovereign State, it may be ufeful to turn’our attention to the political fitu-aiion we were in, prior to the Revolution, and to the political rights which emerged from the Revolution. All the tountry now poifefled by the
 
 United. States
 
 was then a part of the dominions appertaining to the crown of
 
 Great Britain.
 
 Every acre of land in this country was then held mediately- or immediately by grants from that crown. All the people of this country were then, fubjects of the
 
 King
 
 of
 
 Great Britain,
 
 and owed allegiance to him ; and all the civil authority then exifting or exercifed here, flowed from the head'" of the
 
 Briti/h Empire.
 
 •They were in fenfe
 
 fellmv
 
 fubjeéls, and in a variety of refpe£t& one people. When the Revolution commenced, the patriots did not aflfert that only the fame affinity and focial con - neflion fubfifted between the people, of the colonies, which fub-filled between the people of
 
 Gaul, Britain,
 
 and
 
 Spain,
 
 while
 
 Roman Provinces,
 
 viz. only that affinity and focial connection which refult from the mere circumftance of being governed by the fame
 
 Prince ;
 
 different ideas prevailed, and gave occafjon to the
 
 Con-grefsoi
 
 1774 and 1773-.
 

 The Revolution, or rather- the Declaration of Independence* found the people
 
 already
 
 united for general purpofes, and at the fame time providing for their more domeltic concerns by State conventions, and other temporary arrangements. From the crown of
 
 Great Britain,
 
 the fovereignty of their country palled to. the people of it ; and it was then not an uncommon opinion, that tfie unappropriated lands, which belonged to that crown, paffed not to the people of the Colony or States within wholelimits they were fituated, but to the whole people; on whatever principles this opinion relied, it did not give-way to the other, and thirteen fovereignties were confidered as emerged from the principles of the Revolution, combined with local convenience and conlklerations ; the people neverthelefs continued to conlider themfelves, in a national point of view, as one people ; and they continued without ' interruption to manage their national 'concerns accordingly ; afterwards, . in the hurry of the war, and in the warmth of mutual confidence, they made a confederation of the States, the bafis of a general Government.' Experience difappoirited the expectations they had formed from it; and then the people, in their collective and national capacity, eilablijhed the prefent Conllitution. It is r®-
 
 *471
 
 markable.that in eftablifhing it, the people exercifed their own rights, and their own proper fovereignty, and confcious of the plenitude ''of it, they declared with becoming dignity, “ We *ithe
 
 people
 
 of the
 
 United
 
 States, do ordain and eftabliih this <* Conflatution.” Here we fee the people adling as fovereigns of the whole country; and in the language of fovereignty, ef-tablifhing a Conftitution by which it was their will, that the State Governments ihould be bound, and to which the State Conftitutions ihould be made to conform. Every State Confti-tution is a compact made by and between-the citizens of a State to govern themfelves in a certain manner ;.-and the Conftitution. of the
 
 United States
 
 is likewife a compact made by the people of the
 
 United States
 
 to govern themfelves as tp general ob-je£ls, in a certain. manner. By this great compafit howeyer, many prerogatives were transferred to, Ae national Government, fuch as thofe of making war and peace, cont-radting alliances, coining money, &c. &c.
 

 If^ then it be true, that the fovereignty of the nation is in the people of the nation, and the refiduary fovercinty of each Stats in the people pf each State, it may be ufeful to compare thefe fovereignties with thofe in Europe, that we may thence be enabled to judge, .whether all the prerogatives which are allowed to the latter, are fo effential to the former. There is reafon to fufpefl. that fome of the difficulties which, embarrafs the prefent queftion, arife from inattention to differences which fubfift between them.
 

 It will be fufficient to obferve briefly, that the fovereignties ⅛ Europe, and particularly in'
 
 England,
 
 exift oh
 
 feudal
 
 principles. That fyftem confiders the
 
 Prince
 
 as the fovereign, and the
 
 people
 
 as his
 
 fuljects
 
 ; it regards his
 
 perfon
 
 as the ofcjedt of allegiance, and excludes the idea of his being on an equal footing with a fubjedb, either in a Court of Juftice or elfewhere. Thai: fyftem contemplates him as being the fountain of honor and authority ; and from his grace and grant derives all fran-chifes, immunities and privileges ; it is eafy to perceive that fuch a fovereign could not be amenable to a Court of Juftice, or fubje&ed to judicial controul and actual conftraint. It'was of neceffity, therefore, that fuability became incompatible with fuch fovereignty. Befides, the
 
 Prince
 
 having all the Executive powers, the judgment of the Courts -would, in fa£t,be only monitory, not mandatory to him, and a capacity to be advifed, is a diftinft thing from a capacity to be fued. The fame feudal ideas run through all their jurffprudence, and conftantly remind us of the diftincuon between the
 
 Princezná
 
 the fdbject. • No iuc-h ideas obtain'here 5 at the Revolution, the fovereignty de-* volved on the pec’ple ; and.'they are truly the fovereigns of the country, but they
 
 arefovereigns without Jahjecls
 
 (unlels the
 
 Afri
 
 
 *472
 

 can
 
 flaves among us may be fo called) and have none to góveftí-but
 
 thanfelves
 
 ; the citizens of
 
 America
 
 are equal as fellow citi* zens, and as joint tenants in the fovereignty.
 

 From the differences exifting between feudal fovereigntieS and Governments founded on compafts, it neceffarily follows that their refpeclive prerogatives mull differ. Soverignty is the right to govern j a nation or State-fovereign is'the perfon of perfons in whom that refides. In-
 
 Europe
 
 the fovereignty is generally afcribed t® the Prince.; here it refts with the people ; there; the fovereign aétually adminiilers the .Government; here,, never in a fingle inftance; our Governors are the agents of the people, and at moft Hand in the fame relation to their fove-reign, in which regents in
 
 Europe
 
 Hand to their fovereigns. Their
 
 Princes haveperfonal
 
 powers, dignities, and pre-eminences, our rulers have none but official; nor do they partake in the fo-vereignty otherwife, or in any other capacity, than as private citizens.
 

 2d. The fecond objedt of enquiry now prefents itfelf, viz. whether fuahility is compatible with'State fovereignty.
 

 Suability, by whom ? Not a fubjedt, for in this country* there are. none ; notan inferior, for all ihe citizens being as to civilrights perfedlly equal, there is not, in that refpedf, one citizen inferior to another.- It is agreed, that one free citizen may fue another f the obvious dictates of jüílice, and the purpofes erf fociety demanding it. It is agreed, that one free citizen may fue any number on whom procefs can be conveniently executed ; nay) in certain cafes one citizen inay fue forty thou-fand 5 for where a corporation is fued, all the members of it arc
 
 añually
 
 fued, though not perfmally, fued. In this' city there are forty odd thoufand free citizens, all of whom may be collectively fued by any individual citizen. In the State of’
 
 .Delaware,
 
 there are fifty odd thoufand free citizens, and what teafon can be affigned why a free citizen who has demands a-gainft them-ihould not profecute them ? Can the difference between-forty odd thoufand, and fifty odd thoufand rrlake any diftindlion as to right ? Is it not as eafv,' and as convenient to the public and parties, to ferve a fummons on the Governor and Attorney General of Delaware, as on the Mayor or other Officefs of the Corporation of
 
 Philadelphia ?
 
 Will it be faid, that the fifty odd thoufand citizens in
 
 Delaware
 
 being affociatecl under a State Government, Hand’in a rank fo fuperior to the forty odd thoufand of
 
 Philadelphia,
 
 - aflbciated under their charter, that although it may become the latter to meet an individu-ad on an equal footing in a Court ofjuftice) yet that fuch a procedure would not comport with the dignity of thé former ?— ’ In this land of equal liberty, fhall forty odd thoufand in one place be cortípt-llabk to .do juitice, and yet fifty odd thoufand in
 
 *473
 
 smother place be privileged to do juftice
 
 only
 
 as they may think proper ? Such Objections would not correfpond with the equal tights we claim ;' with the' equality we profefs to admire and maintain, and with that popular fovereignty in which every citizen partakes. Grant that the Governor of
 
 Delaware
 
 holds an ■office of fuperior rank to the Mayor of Philadelphia, they are both neverthelefs thei officers of the people ; and however moré exalted the one may be than the other, yet in the opinion of thofé who dillike ariftocracy, that circumftance cannot be a good reafon for impeding the courfe of juftice»
 

 If there be any fuch incompatability as fe pretended, Whence does it arife ? In what does it confift ? There is at leaft oné ftrong undeniable faft againft this incompatibility, and that is this, any one State in the
 
 Union
 
 may fue another State, in this Court, that is, all the people of one State may fue all the people of another State» It is plain then, that a State may be
 
 J'ued>
 
 and hence it plainly follows, that
 
 friability
 
 and
 
 fíate fovereignty
 
 are not incompatible. As one State may fue another State itt this
 
 Court,,
 
 it is plain .that no degradation toa State is thought to accompany her appearance in this Court. It is not therefore to an appearance in this
 
 Court
 
 that the objefilion points» To what does it point ? It points to an appearance at the füit of one or more citizens. But why it fhould be more incompatible, that all the people of a State fhould be fued by
 
 one
 
 citizen, •, than by one hundred thoufand, I cannot perceive, the procefs in both cafes being alike ; and the confequenees of a judgment alike. Nor can I obferve any greater inconveniencies in the One ^cafe than in the other,' except what may arife from the feelings of thofe who may regard a leiTer number m an inferior light-. But if any reliance be made on this inferiority as an objection, at leaft one
 
 half oí
 
 its force is done away by this fa¡S, viz. that it is conceded that a State may appear in this Court as Plaintiff againft a fingle citizen as Defendant; and the truth is, that' the State of
 
 Georgia
 
 is at this moment profecuting an a ¿lion in this Court againft two citizens of
 
 South
 
 Carolina.
 
 *
 


 The only remnant of objection therefore that remains is, that the State is not bound to appear and anfwer as a
 
 Defendant
 
 at the fuit cf an individual t but why it is unreafonable that {he fhould be fo bound, is hard to conjecture : That rule is faid td bé a bad one, which does not work both’ ways 5 the citizens of Gorgin'are content with ■ a right of fuing citizens of other States; but are not content that citizens of other States fliould have a right to fue them-.
 

 Let us now proceed-to equire whether
 
 Georgia
 
 has not, by being a party to the national compact, confented to be fuable by individual ^citizens of another State. This enquiry naturally
 
 *474
 
 'leads our attention, ill. To the defign of the Conftitution» 2d. To the letter and exprefs declaration in it.
 

 Prior to the date of the Conftitution, the. people had not any national tribunal to which they could refort for juftice ; the diftribution of juftice was then confined to State judicatories, in whofe inftitution and organization the people of the other States had'no participation, and over whom they had not the leaft controul. There was then no general Court of appellate • jurifdidtion, by whom the errors of State Courts, affecting either the nation at large or the citizens of any other State, could ■be revifed and corrected. Each State was obliged to, acquiefce ,iii the meafure of juftice which another State might yield to her, or to her citizens; and that even in cafes where State con-fiderations were not always favorable to the mod exadt meafure. There was danger that from this fource .animofities would in time réfult; and as the tranfition from animofities to hoftilities was frequent in the hiftory of independent States, a common tribunal for the termination of controverfies became defirable, from motives both of juftice and of policy.
 

 Prior alfo to that period, the
 
 United States
 
 had, by taking a place among the nations of the earth, become amenable to the. laws’of nations; find it was their intereft as well as-; their duty to provide;. that thofe laws íhould be refpedted and obeyed ; in their national character and capacity, the
 
 United States -were
 
 vefponfiblc to foreign nations for .the cóndudt of each State, relative to the laws óf nations, and the performance of treaties ; and there the inexpediency of referring all fuch queftions to State Courts, and particularly to the Courts of delinquent States became apparent. While
 
 ail
 
 the States were bound to protedt each, and the citizens of
 
 each,
 
 it was highly proper,and reafona-ble/that they íhould be in a capacity, not only to caufe juftice to-be done & each, and the citizéns of each; but alfo to caufe juf-iice. to be done
 
 by
 
 each, and the citizens of each; and that, not by violence and force, but in a ttáble; fedate, and regular courfe of judicial procedure.
 

 Thefe weje among the evils againft which it was proper for the nation, that is, the people of all the
 
 United States,
 
 to pro- ' vide by a national judiciary, to be inftitutedby the whole nation, ■ and to" be vefponfible to the whole nation.
 

 Let us now turn to the Conftitution. The people therein declare, that their defign in eftabliihing it, comprehended
 
 fix
 
 objedts. 1 ft. To form a more perfedt union. 2d. Toeftabliih juftice. 3d. To eiifure domeftic tranquillity. 4th. To provide for the common defence. .5 th; To promote the general welfare.- 6th. To fecuve the bleffings of liberty to themfelves and théir poftérity. It would be pleafing and ufcful to confider and trace the relations which each of thefe objedts bears to the others;
 
 *475
 
 and to íhew that they colle&ively comprife every thing requi-fite, with the bleffing of Divine Providence* to render a-people profperous and happy ; on the prefent o.ccafion • fuch diiquifi-tions woúld be unfeafonable, becaufe foreign to the fubjedt immediately under confideration.
 

 It may .he aflcedj. what-is the ¡ preeife fenfe and latitude in which the words “
 
 to cflablijh jujlicc ”
 
 as,here fifed, .are to be underftood ? The anfwer- to this queftion. will refult from the provifiohs made in the Conftitution on this head.. They are Specified in the 2d. fedrion of the 3d article, where it is ordained, that the judicial power of the
 
 United States-
 
 ihall extend to ten deferiptions of cafes, viz. ift. To all cafes arifing under this Conftitution j becaufe the meaning, conftruction, and operation of a compadt ought always to be.afcertained by all the parties, or by authority derived only from one of them.' 2d. To all cafes arifing under the laws of- the
 
 United
 
 'States■ j be-caufe as fuch laws conftitutionally made,- are obligatory on each State, the meafure of obligation and obedience ought not to be decided and fixed by the party frotn whom they.-are due, but by a .tribunal deriving authority from both the parties..- 3d. To'all cafes arifing. under' treaties made by their authority-; -be-caufe, as treaties are compádls made by, and obligatory 01ft the whole- -nation, their operation ought not to be affected .or regulated by the fecal laws or Courts of a part of the nation. 4th. To- all cafes 'affedting Ambaffadors, or other public ‘ Minifters and Confuís •, becaufe, as thefe are officers of foreign nations, whom this nation are bound to protedt and treat according to the laws of nations, cafes affedting them ought only to be cognizable by national authority. 5th. To. all cafes of Admiralty and Maritime j.urifdidtion; becaufe, as the feas-are the joint property of nations, whófe right and privileges relative, thereto, are regulated by the law of nations and treaties,, fuch cafes neceflaiil.y belong to national jufifdidtion. 6th- To controver-fies to which the
 
 United States
 
 ihall he a party j becaufe in cafes in which the whole .people are interefted, it would not be equal or wife' to let any one State decide and meafure out the juff ice due to others. 7th. To. controverfies between, two or more States ; becaufe domeftic tranquillity .requires, that the contcu-tionsof States ffiould be peaceably terminated by a common judicatory .; and, becaufe,. in a free country j-uftice ought not-to depend on the
 
 will
 
 of either of the litigants. • 8th. To con-troverfies between a State and citizens of another State ; be-caufe in cafe a State (that is all the citizens of it) has demands againft. fome. citizens'of another State, it is better that llie. ffiould prcfecute their demands in-a national Court,' than in a Court of the State to-which thofe citizens belong ; the danger of irritation⅛ and criminations arifing from apprehenfions and
 
 *476
 
 fufpicions of partiality, being thereby obviated. Becaufe, fo cafes where fome citizens of one State have demands againft all the citizens of another State, the caufé of liberty and. the. rights of men forbid, that the latter fliould be the foie Judges, of the juflice due to the latter
 
 •,
 
 and true- Republican Cavern-, ment requires that free and equal citizens fhould have free, fair, and equal juflice. pth, To controverfies. between citizens of the fame State, claiming lands under grants of different States ; becaufe, as the rights of. the two States to grant the'land, are drawn into queftion, neither of .the two States ought to decide .thecontroverfy. icth,' To.contro.verfies between a State, or the citizens thereof; and foreign States, citizens or fubjedls j becaufe, as every nation is refponfible for the conduit of its citizens towards-other nations ; all queftions touching the juf-i tice due to foreign nations, or people, ought to be afeertained by, and depend on.natipnal authority.' Even' this curfory view-of the judicial powers of the -
 
 United States,
 
 leaves the mind ftrongly imprefled with the importance of them to the prefer-, vhtionof the tranquillity, the equal, fovereignty, and the equal right of the people.’
 

 The question now before us renders it necessary to pay particular attention to that part of the 2d section, which extends the judicial, power “to
 
 controversies between a state and citizens, of
 
 another state." It is contended, that this ought to be con-strued to reach none of these controversies, excepting those in which a State may be
 
 Plaintiff.
 
 The ordinary rules for construction will easily decide whether those words are to be understood in that limited sense.
 

 This extension of power is
 
 remedial,
 
 because it is to settle controversies. It is therefore, to be construed liberally. It is politic, wife, and good, that, not only the controversies, in which a State is
 
 Plaintiff,
 
 but also those in which a State is
 
 Defendant,
 
 should be settled; both cases, therefore, are within the reason of the remedy; and ought to be so adjudged, unless the obvious, plain, and literal sense of the words forbid it. If we attend to the
 
 words,
 
 we find them to be express, positive, free from ambiguity, and without room for such implied expressions: “Th
 
 e judicial, power of the United States shall extend to extend to controversies between a state and citizens of another state.”
 
 If the Constitution really meant to extend these powers only to those controversies in which a State might be
 
 Plaintiff,
 
 to the exclusion those in which citizens had demands against a State, it is inconceivable that it should have attempted to convey that meaning in words, not only so incompetent, but also repugnant to it; if it meant to exclude a certain class of these controversies, why were they not expressly excepted; on the contrary, not even an intimation of such intention appears in
 
 *477
 
 any part of the Constitution. It cannot be pretended that where citizens urge and insist upon demands against a State, which the State refuses to admit and comply with, that there is no
 
 controversy
 
 between them. If it is a
 
 controversy
 
 between them, then it cleanly falls not only within the spirit, but the very words of the Constitution. What is it to the cause of justice, and how can it effect the definition of the word controversy, whether the demands which cause the dispute, are made by a against citizens of another State, or by the latter againsthe former? When power is thus extended to a
 
 controversy,
 
 it necessarily, as to all judicial purposes, is also extended to those, between whom it subsists.
 

 The exception contended for, would contradict and do violence to the great and leading principles of a free and equal national government, one of the great objects of which is, to ensure justice to all: To the few against the many, as well as to the many against the few. It would be strange, indeed, that the joint and equal sovereigns of this country, should, in the very Constitution by which they professed
 
 to establish justice,
 
 to far deviate from the plain path of equality and impartiality, as to give to the collective citizens of one State, a right of suing individual citizens of another State, and yet deny to those citizens a right of suing them. We find the same general and comprehensive manner of expressing the same ideas, in a subsequent clause; in which the Constitution ordains, that
 
 “
 
 in all cases affecting Ambassadors, other public Ministers and Consuls,
 
 and those in which a state shall be a party,
 
 the Supreme Court shall have original jurisdiction.” Did it mean here
 
 party-Plaintiff?
 
 If that
 
 only
 
 was meant, it would have been easy to have found words to express it. Words are to be understood in their ordinary and common acceptation, and the word
 
 party
 
 being in common usage, applicable both to
 
 Plaintiff and Defendant,
 
 we cannot limit it to
 
 one
 
 of them in the present case. We find the Legislature of the
 
 United States
 
 expressing themselves in the like general and comprehensive manner; they speak in the 13th section of the judicial act, of controversies where a State is a
 
 party,
 
 and as they do not impliedly or expressly apply that term to either of the litigants, in particular, we are to understand them as speaking of
 
 both.
 
 In the same section they distinguish the cases where Ambassadors are
 
 Plaintiffs,
 
 from those in which Ambassadors, are
 
 Defendants,
 
 and make different provisions respecting those cases; and it is not unnatural to suppose, that they would in like manner have distinguished between cases where a State was Plaintiff, and where a State was Defendant, if they had intended to make any difference between them; or if they had apprehended that the Constitution had made any difference between them.
 

 
 *478
 
 I perceive, and therefore candor urges me to mention, a circumstance, which seems to favor the opposite side of the question. It is this: the fame section of the Constitution, which extends the judicial power to
 
 controversies “
 
 between a State and the citizens of another State,” does also extend that power to
 
 contreversies to which the United States are a party.
 
 Now, it may be said, if the word
 
 party
 
 comprehends both Plaintiff and Defendant, it follows, that the
 
 United States
 
 may be sued by any citizen, between whom and them there may be a
 
 controversy.
 
 This appears some to be fair reasoning; but the same principles of candour which urge me to mention this objection, also urge me to suggest an important difference between the two cases. It is this: in all cases of a actions against States or individual citizens, the National Courts are supported in all their legal and Constitutional proceedings and judgments, bthe arm of the Executive power of the
 
 United Slates
 
 but in cases of actions against the
 
 United States,
 
 there is no power which the Courts can call to their aid. From this distinction important conclusions are deducible, and they place the cafe of a State, and the case of the
 
 United
 
 States, in very different points of view.
 

 I wish the State of society was so far improved, and the science of Government advanced to such a degree of perfection, as that the whole nation could in the peaceable course of law, be compelled to do justice, and be sued by individual citizens. Whether that is, or is not, now the case, ought not to be thus collaterally and incidentally decided: I leave it a question.
 

 As this opinion, though deliberately formed, has been hastily reduced to writing between the intervals of the daily adjournments, and while my mind was occupied and wearied by the business of the day, I fear it is less concise and connected than it might otherwise have been. I have made no references to cases, because I know of none that are not distinguishable from this cafe; nor does it appear to me necessary to shew that the sentiments of the best writers on Government and the rights of men, harmonize with the principles which direct my judgment on the present question. The acts of the former
 
 Congresses,
 
 and the acts of many of the State Conventions, are replete with similar ideas, and to the honor of
 
 the United States, it
 
 may be observed, that in no other country are subjects of this, kind better, if so well, understood. The attention and attachment of the Constitution to the equal rights of the people are discernable in almost every sentence of it; and it is to be regretted that the provision in it which, we have been considering, has not in every instance received the approbation and acquiescence which it merits.
 
 Georgia
 
 has in strong language advocated the cause of republican equality: and there is reason to
 
 *479
 
 hope that the people of that State will yet perceive that, it would not have been consistent with that equality, to have exempted the body of her citizens from that suability, which they are at this moment exercising against citizens of another State.
 

 For my own part, I am convinced that the sense in which I understand and have explained the words “controversies between States and citizens of another State,” is the true sense. The extension of the judiciary power of
 
 the United States
 
 to such controversies, appears to me to be
 
 wife,
 
 because it is honest, and because it is
 
 useful.
 
 It is honest, because it provides for doing justice without respect of persons, and by securing individual citizens as well as States, in their respective rights, performs the promise which every free Government makes to every free citizen, of equal justice and protection. It is useful, because it is honest, because it leaves not even the most obscure and friendless citizen, without means of obtaining justice from a neighbouring State; because it obviates occasions of quarrels between States on account of the claims of their respective citizens; because it recognizes, and strongly rests on this great moral truth, that justice is the same whether due from one man or a million, or from a million to one man; because it teaches and greatly appreciates the value of our free republican national Government, which places all our citizens on an equal footing, and enables each and every of them to obtain justice without any danger of being overborne by the weight and number of their opponents; and, because it brings into action, and enforces this great and glorious principle, that the people are the sovereign of this country, and confequently that fellow citizens and joint sovereigns cannot be degraded by appearing with each other in their own Court's to have their controversies determined. The people have reason to prize and rejoice in such valuable privileges; and they ought not to forget, that nothing but the free courfe of Conilitutional law and Government can ensure the continuance and enjoyment of them.
 

 For the reasons before given, I am clearly of opinion, that a State is suable by citizens of another State; but left I should be understood in a latitude beyond my meaning, I think it necessary to subjoin this caution, viz, That such suability may nevertheless not extend to all the demands, and to every kind of action; there may be exceptions. For instance, I am far from being prepared to say that an individual may sue a State on bills of credit issued before the Constitution was esltblished, and which were issued and received on the faith of the State, and at a time when no ideas or expectations of judicial interposition were entertained or contemplated.
 

 
 *480
 
 The following order was made
 

 By the Court.
 


 It is ordered,
 
 that the Plaintiff in this cause do file his declaration on or before the first day of
 
 March
 
 next.
 

 Ordered, that certified copies of the said declaration be served on the Governor and Attorney General of the State of Geor
 
 gia,
 
 on or before the first day of
 
 June next.
 


 Ordered, that unless the said State shall either in due form appear, or snew cause to the contrary in this Court, by the first day of next Term, judgment by default shall be entered against the said State.
 
 *
 


 THE Court being met, a commission appointing William Paterson, one of the Justices, bearing, date the 4th of March, 1793, was read; and he was qualified according to law.
 
 †
 
























 See
 
 Gast's Hist, of Greece ¡ p,
 
 321.
 




 .
 
 231.'
 




 .Él.
 
 -4.5—5a. 147, i-6'j—i6i.
 



 *
 

 Ant. b.
 


 *
 


 Som, Sup.
 
 c. 3.
 


 *
 


 Ait.
 
 i.
 
 s,
 
 T -Írí. 3.-'r. 3.
 
 Art.
 



 *
 


 Fait. B.
 
 1, a #.<4*
 


 *
 


 Jit,
 
 113;
 


 †
 


 i Sl,
 
 t Com, ciu. 2.42.
 


 †
 


 Sid.
 
 53 u
 


 *
 

 Mol. 71.
 
 Book
 
 it.
 


 †
 

 4
 
 C. A. N.
 
 487.
 


 §
 


 Com.
 
 104.
 


 ‡
 


 Brae. .icy.
 
 Com,--104.
 


 ||
 


 Q, fl IZ4<,
 



 ¶
 


 Col. Jur.
 
 68, ‘*'War, 347:
 


 †
 


 Efi
 
 155.. ' i
 
 Bt.
 
 155,=
 


 *
 

 27.. J. 2.
 
 v.
 
 54.
 
 Pol,
 
 J.2, one of the words, of1 which democracy in compounded.
 


 *
 


 Ar.
 
 1 . ⅛* to.
 


 †
 


 Brae,
 
 107.
 


 *
 


 Art.
 
 5.
 
 s. 2.
 



 *
 


 Georgia v. 'Zrqilsford, et ah Ant.
 
 1,
 


 *
 

 In
 
 February
 
 Term, 1794, judgment was rendered for the Plaintiff, and a Writ of Enquiry awarded. The Writ, however, was not sued out and executed; so that this cause, and all the other suits against States, were swept at mice from the Records of the Court, by the amendment to the Federal Constitution, agreeably to the unanimous determination of the Judges, in
 
 Hollingsworth et al. v.
 
 Virginia, argued at
 
 February
 
 Term, 1798.
 


 †
 

 Judge Paterson’s appointment was in the room of Mr.
 
 Justice
 
 Johnson, who had resigned.
 

 The Malignant Fever, which during this year, raged in the City of Philadelphia, dispersed the great body of its inhabitants, and proved fatal to thousands, interrupted, likewise, the business of the Courts; and I cannot trace, that any important cause was agitated in the present Term.